THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. M. T. CHANCE, as Administrator of the Estate of John B. Finnegan, deceased.

No. 8510.

1. ACTION AGAINST A RAILROAD COMPANY —Incompetent Juror· In the examination of a juror on his voir dire, in an action against a railroad company for damages arising from personal injuries, he admitted that he had a feeling against railroads generally, and said that it would require a continual effort on his part to deal with the railroad company in the same way that he would with an individual, and that, perhaps, he could not consider the case in an impartial way. Held, That the juror ought to have been excused on the challenge of the defendant for cause.

2. INJURY TO EMPLOYEE—Management of Hand-cars. The distance that hand-cars running on the same track should be kept apart, under certain circumstances, in order reasonably to protect

Statement of the Case.

the men against danger, is a question for the jury to determine upon evidence of all the facts, rather than by the opinion of a witness.

3. —— *Damages for Mental Suffering.* A recovery may be had for mental suffering or anguish of mind resulting. from physical pain and suffering endured by the injured party; but it is improper to admit evidence as to mental suffering on account of the circumstances and condition of others.

4. —— *Measure of Damages for Loss of Time.* In fixing the value of time lost by an adult injured party, it is proper to consider his age, his occupation, and the wages he had earned in the past in whatever capacity he may have been employed; but the opinions of witnesses as to what he would be capable of earning at vocations in which he had never been employed are inadmissible.

5. —— *Damages Where Death Occurs from Other Causes.* Where the plaintiff, in an action for damages sustained from personal injuries, dies before the trial from a cause other than such injuries, and the action is revived in the name of his personal representative, damages for the permanent deprivation of health and of the capacity to work and enjoy life should be limited to the period between the injury and the death.

6. —— *Evidence and Findings Sufficient.* The evidence and the answers of the jury to particular questions of fact examined, and *held,* that they justify a verdict and a judgment against the railroad company.

*Error from Butler District Court.*
*Hon. C. W. Shinn, Judge.*

REVERSED AND REMANDED.        OPINION FILED JUNE 6, 1896.

STATEMENT BY THE COURT.

ON December 1, 1890, John B. Finnegan, one of a gang of men employed by the plaintiff in error to relay its track with steel rails from a distance north of Augusta to that place, was seriously injured by falling off a derailed hand-car and being run over by another which was following it.   On August 21, 1891, he commenced his action against the railroad company to recover $20,000 damages by reason of said injury.   He alleged that the hand-car on which he

rode at the time was much worn by long usage and service, and was badly out of repair and unfit for use ; that three hand-cars were used in transporting the men and carrying the tools from Augusta to the place of doing the work in the morning and back again in the evening ; that it was the duty of the foreman to keep the cars at a safe distance apart, and to place the defective car behind the others ; but, in returning from their work that evening, the defective car on which the plaintiff was riding was placed in the middle, and the hindmost car was negligently permitted to follow close upon it ; that while propelling said defective car it came upon a rail that was badly battered, split, and in an unsafe condition, whereby said hand-car was derailed and the plaintiff thrown off behind the same and run over by the rear car, and he was greatly injured. On October 18, 1891, Finnegan committed suicide by hanging himself, and on December 2, 1891, the action was revived in the name of Hattie M. Finnegan, as administratrix, she being his widow. The action was tried at the March term, 1892, resulting in a judgment in favor of the plaintiff for $14,806.41, and this proceeding in error was brought to reverse said judgment. Since the case came here said Hattie M. Finnegan died, and M. T. Chance was appointed in her place as administrator, and the proceeding in error was revived against him.

William Dye was called as a juror and examined at some length by the respective counsel and by the court. He admitted that he had a feeling against railroads generally, which had existed for several years, and the following questions were propounded to and answered by him :

"Ques. Would it not require a continual effort on your part to deal with the railroad company in the

same way that you would deal with an individual? Ans. Yes.

"Q. So believing and so feeling, Mr. Dye, do n't you believe that you could not take this case in the same impartial way that you would take a case between two individuals? A. Perhaps not."

The plaintiff's counsel resisted the defendant's challenge for cause, and it was overruled by the court. Mr. Dye was afterward challenged peremptorily, and the defendant exhausted all its peremptory challenges.

Mr. Schroeder was called as a witness for the plaintiff. He had been a section-foreman, and over the objections of the defendant he answered questions as follows :

"Ques. You may state, Mr. Schroeder, what are the duties of a section-foreman in the control of men in their work in the laying of steel, taking up of iron rails and laying of steel ones upon the track, where the gang of men go to and from their work on three hand-cars. Ans. To tell them the proper distance to run apart and instruct them to that effect.

"Q. Define, now, what other duties would devolve upon the foreman besides telling them what distance they should run apart. A. To see that his instructions be carried out.

"Q. What duties would devolve upon him as to the distance the cars should run apart? A. To tell them they should not run any closer than four telegraph-poles apart, and explain the dangers, and why."

Several witnesses testified to the despondency of Mr. Finnegan during his illness and suffering, and that he was much troubled by the sickness and confinement of his wife and the fear that he would leave her and the child in a dependent and helpless condition. The defendant moved to strike out this evidence as to trouble on account of the wife and the child, but the court overruled the motion. Witnesses were permitted,

over the objections of the defendant, to give their opinions as to what Mr. Finnegan would be capable of earning in several different vocations in which he had never been employed.

As to the measure of damages, the court instructed the jury as follows :

"21. If you find, from a preponderance of the evidence in the case, under the instructions of the court, that the plaintiff is entitled to recover in this action, you may, in determining the amount of her recovery, take into consideration : (1) The pain and suffering, physical or mental, if any, undergone by the said John B. Finnegan as a result of the injury ; (2) the money expended or liability incurred necessarily and reasonably, if any, by the said John B. Finnegan for medical attendance as a result of the injury ; (3) the value of the time lost, if any, by the said John B. Finnegan, as a result of the injury ; (4) the disability or diminished earning capacity, whether total or partial, temporary or permanent, incurred by the said John B. Finnegan as a result of the injury, and from these elements, or so many of them as you find are established by a preponderance of the evidence, assess the amount of plaintiff's recovery at a sum which you believe would fairly and justly have compensated the said John B. Finnegan for the injury sustained."

After the jury had been in consultation during a day and a night, they were permitted to come into court, when they asked the following question : "In estimating damages for permanent injury, if any, is the time limited to actual lifetime of injured?" The court in answering this question concluded as follows :

"You cannot allow plaintiff anything for the loss, of the support and sustenance of her husband ; if you find for the plaintiff, the question for you to determine is : What would have been a fair and just compensation for said Finnegan for the injuries sustained?

What ought he fairly to have received for each and all the elements of damages mentioned in instruction number 21, which you may find sustained by the evidence, including any permanent disability sustained by him? And, in estimating damages for permanent injury, you are not limited to the time said Finnegan actually lived."

The verdict of the jury was made up of the following items : Doctor's bill, $861; mental suffering and anguish, $4,000; physical suffering, $6,000; loss of service from the time of the accident until death, $350; permanent injury, $3,595.40. The last item was explained by the following question and answer:

"Ques. For what length of time do you allow in estimating damages for permanent injury? Ans. A possibility of from 10 to 20 years."

The defendant moved for judgment in its favor on the answers of the jury to the particular questions of fact submitted to them, notwithstanding the general verdict, and further moved for a new trial, but these motions were overruled. Some other facts will appear in the opinion.

*A. A. Hurd, W. Littlefield*, and *O. J. Wood,* for plaintiff in error.

*N. A. Yeager*, and *George Gardner*, for defendant in error.

The opinion of the court was delivered by

MARTIN, C. J. : I. The court erred in overruling the defendant's challenge for cause of William Dye as a juror. He seems to have been fair and straightforward in answering the questions of court and counsel, and he might have been entirely fair in the considera-

tion of the case; but, as he felt that it
would require a continual effort on his
part to deal with the railroad company in
the same way that he would with an individual, and
that, perhaps, he could not consider the case in an
impartial way, it was the duty of the court to excuse
him. A juror may be challenged "on suspicion of
prejudice against, or partiality for, either party"
(§ 270, Code) ; and where the trial judge is in doubt as
to the impartiality of a juror, a challenge for cause
should be sustained. (*M. K. & T. Rly. Co. v. Munkers*,
11 Kan. 223, 232.) The defendant having exhausted
all its peremptory challenges, the error will be con-
sidered material although the juror was afterward
discharged on peremptory challenge. (*The State v. Vo-
gan*, 56 Kan. 61, 63, and cases cited.)

1. Incompetent juror.

II. The quoted testimony of Mr. Schroeder was some-
what objectionable, notwithstanding the liberal rule
adopted by this court in *Mo. Pac. Rly. Co. v. Mackey*,
33 Kan. 298, as to the duties of persons engaged in
a particular employment. It does not appear that
Mr. Schroeder had ever been foreman of a gang of
men engaged like this in relaying a track and using
several hand-cars in their work. Besides it was a
question of fact for the jury to determine as to the
distance that the hand-cars should be kept
apart so as not to be a source of danger to
the men riding upon them, for a safe dis-
tance would vary with the speed of the cars, and the
grade and condition of the track, and would not, neces-
sarily, be "four telegraph-poles" at all times. The
admission of this evidence, however, would not require
a reversal of the case, for the evidence shows that the
hindmost car was within 15 to 30 feet of the middle
one at the time of the derailment of the latter; but,

2. Management of hand-cars.

as the case must be retried, we have deemed it best to call attention to the error in the admission of this testimony, in order to guard against its repetition.

III. The court erred in refusing to strike out the testimony to the effect that Finnegan was troubled by the sickness and confinement of his wife, and the fear that he would leave her and the child in a dependent and helpless condition. Under the decisions of this court, a recovery may be had for mental suffering or anguish of mind resulting from physical pain and suffering endured by the injured party; but it is improper to admit evidence as to mental suffering on account of the circumstances or condition of others. (*City of Parsons v. Lindsay*, 26 Kan. 426, 435; *City of Salina v. Trosper*, 27 id. 544, 564; *West v. Telegraph Co.*, 39 id. 93, 99.) The sum awarded for mental suffering, which was liberal, may have been enhanced by the admission of this incompetent testimony, and we cannot hold that the error in its admission was not prejudicial to the defendant.

3. Damages for mental suffering.

IV. In fixing the value of the time lost by Finnegan from the date of his injury until his death, it would be proper for the jury to consider his age, his occupation, and the wages which he had earned in the past in whatever capacity he may have been employed. The opinions of witnesses, however, as to what he would be capable of earning at vocations in which he had never been employed were clearly inadmissible. (*A. & W. P. Rld. Co. v. Newton*, 85 Ga. 517, 526; same case, 45 Am. & Eng. R. Cas. 211.) This is also an error for which the court would not reverse the judgment, as the allowance for loss of time was not substantially different from the amount shown by competent evidence.

4. Damages for loss of time.

V. Instruction 21 was somewhat vague and uncertain as to the fourth element of damage, and it was this, no doubt, that caused the inquiry of the jury as to whether damages for permanent injury were limited to the actual lifetime of the person injured ; and this called forth the further instruction of the court that such damages were not limited to the lifetime of Finnegan. In the answer of the jury to the particular question of fact regarding the length of time taken into consideration as a basis for an estimate, the jury evidently had regard to the expectancy of the life of Finnegan, although no evidence was introduced upon the subject. We think, however, that such evidence would not have been admissible, for expectancy is only to be resorted to in the absence of certainty, and as the life of Finnegan was terminated before the trial, there was no basis for an estimate of damages extending beyond that period. Damages for the permanent deprivation of health and of the capacity to work and enjoy life should therefore be limited to the period extending from December 1, 1890, to October 18, 1891. (Busw. Pers. Inj. § 20.)

5. When death results from other causes.

VI. The court did not err in overruling the motion of the defendant for judgment in its favor, notwithstanding the general verdict. It is true that Finnegan assumed the ordinary risks of the employment in which he was engaged, and all defects in the hand-car and in the track of which he had knowledge, or which in the exercise of ordinary care should have been known to him. The upright of the hand-car had been broken and was mended only in a temporary way. This was a patent defect of which Finnegan must be held to have known, but it was not even a contributing cause to the derailment.

6. Evidence and findings sufficient.

The worn condition of the cog-wheels and of the flanges was not so obvious. The active duty of inspection was not incumbent upon Finnegan, and therefore it was a question of fact for the jury to determine whether he, in the exercise of ordinary care, should have discovered that the hand-car was unsafe and unfit for use in these respects. Finnegan was not a section-man engaged in repairing the track. He and his colaborers were taking up the old track, and laying down new steel rails. The road was in operation, and Pat. Lynch was the section-foreman, whose duty it was to keep the track in a reasonably safe condition until the new steel rails were laid down. He testified that he knew of this particular defective rail for two weeks prior to the injury. Finnegan had no opportunity of examining this rail, or any other, except in passing over the track on the hand-car going to and from his work. The evidence shows that many of the iron rails were battered and worn, but the particular one where the derailment occurred was unusually bad. It was also a question for the jury to determine whether Finnegan was guilty of negligence or not in running over this bad rail to and from his work without objection. Hare, the foreman of the steel gang, testified that it was dangerous to run the cars at a less distance than a telegraph-pole, or 180 feet apart, yet he must have known that on this occasion the three cars were running quite near to each other, and the men on the hindmost car certainly knew that they were very close upon the middle car, and Finnegan was powerless to prevent this, except by running faster, which would involve the first car in danger. The evidence and the particular findings of fact justify a verdict in favor of the plaintiff. Finnegan, who was only 29 years of age, was left a physical wreck by the

injury, so that life was changed from a pleasure to a burden, which he perhaps chose to lay down rather than longer to bear, and, except for the large allowance for permanent injury, we cannot say that the verdict is excessive.

The defendant in error challenges the sufficiency of the record to present the errors complained of, but we think that, by a liberal interpretation, the record must be held sufficient. The plaintiff in error presents some further questions, but we think they are without substantial merit.

On account of the errors hereinbefore mentioned, however, the judgment must be reversed, and the case remanded for a new trial.

All the Justices concurring.