# SUPREME COURT,

## STATE OF KANSAS.

## JANUARY TERM, 1908.

*PRESENT:*

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,
HON. CLARK A. SMITH,
HON. SILAS W. PORTER, } JUSTICES.
HON. CHARLES B. GRAVES,
HON. ALFRED W. BENSON,

FLORA SHELTON v. L. BORNT *et ux.*

No. 14,509.   (93 Pac. 341.)

SYLLABUS BY THE COURT.

DAMAGES—*Trespass—Mental Suffering—Immaterial Error.*   In an action for damages for unlawfully removing plaintiff's household goods from a dwelling-house into the street, where it is admitted on the trial that under the pleadings plaintiff is not entitled to recover any damages for injury to her property, and it appears that she suffered no physical injury of any kind, and the only claim for damages is based upon mental suffering, fright, humiliation and disgrace occasioned by the acts of defendant in removing the goods, the judgment will not be reversed for alleged error in sustaining a demurrer to the evidence, since it appears that plaintiff was only entitled to nominal damages.

Error from Saline district court; ROLLIN R. REES, judge.   Opinion filed January 11, 1908.   Affirmed.

*C. M. Holmquist,* and *T. F. Garver,* for plaintiff in error.

*Z. C. Millikin,* for defendants in error.

1—77 KAN.

The opinion of the court was delivered by

PORTER, J.: Flora Shelton brought this action to recover damages for the unlawful acts of the defendants in forceably depriving her of the possession of two rooms in a dwelling-house and in removing therefrom her household goods. The petition set forth that on January 9, 1902, she was in the lawful possession of two rooms in a dwelling-house in Salina; that on that date the defendants, with wanton and malicious intent to injure, damage and humiliate the plaintiff, unlawfully broke into, entered and took possession of the rooms and removed therefrom plaintiff's household goods and pitched them into the street. She sued for $1000 damages.

The case was tried to the court and a jury. At the conclusion of plaintiff's testimony the court sustained a demurrer to the evidence, and this is alleged as error. The evidence disclosed the following facts: The defendants are husband and wife. The dwelling-house in question belonged to the wife, but the husband had some care and control over it, made repairs, and served notices to tenants, as agent. Defendants lived in another house on an adjoining lot. In August, 1901, they rented the dwelling-house to L. S. Conner, who was to have possession until the following May. On November 30, 1901, Conner rented two of the rooms to plaintiff, and she paid him six dollars for the first month. He gave her a receipt and also a written statement that she was to have the privilege of occupying the rooms on the same terms until March 1, 1902. About January 1 Conner arranged to move to Missouri. He surrendered his lease and served the following written notice upon plaintiff:

"SALINA, KAN., January 4, 1902.

"Mrs. Shelton, you are hereby notified to vacate the two rooms you now occupy on or before January 7, 1902. Reason why, I no longer occupy building.
"L. BORNT, *Agent.*          L. S. CONNER, *Renter.*"

She told Conner she would get out as soon as she could find rooms.   On January 7 L. Bornt, as agent, served her with another written notice to leave.

On the 9th day of January plaintiff had arranged to vacate the premises and had secured another house.   She was down town for the purpose of procuring a dray to remove her goods.   During her absence Mr. Bornt took some men and entered the rooms and began to remove her household goods and place them in the street. When she returned and found the men removing her goods in this manner she was frightened and went down town and complained to the county attorney and to the mayor.   She returned to the house and found both defendants there, and inquired if she could go in and get some of her property, which was missing.   The husband, in the presence of the wife, informed plaintiff that the house was locked to her.   The wife said, "You had better let her in."   She secured the rest of her goods, and soon afterward they were loaded upon a dray and taken to her new quarters.   The evidence showed that the weather was clear and that the damages, if any, to the property were trifling.   No act of assault or violence was offered to plaintiff or any member of her family.   In fact, there is no allegation in the petition of any damages to plaintiff's person or property.   During the trial the following admission was made by plaintiff, as shown by the record:

"It was conceded by the plaintiff on the trial of this cause that her amended petition did not entitle her to any recovery of damage on account of the injury, if any, to her property, and that she based her right of recovery upon alleged trespass upon her personal rights and not upon her property rights."

The purpose or object of the foregoing admission on the part of plaintiff's attorney is inexplicable except upon the theory that the petition failed to allege that the person or property of plaintiff was injured.   In view of the admission that the property sustained no damage, and the fact that the evidence shows that

plaintiff suffered no physical injury, there remained nothing upon which to base a claim of damages except mental suffering caused by the humiliation and disgrace which would naturally follow from having one's household goods emptied into the street. The rule adopted by this court years ago, and followed in numerous cases, denies recovery for mental pain, anguish or humiliation except when accompanied by some physical injury to the person. (*City of Salina v. Trosper,* 27 Kan. 544; *West v. Telegraph Co.,* 39 Kan. 93, 17 Pac. 807, 7 Am. St. Rep. 530; *A. T. & S. F. Rld. Co. v. McGinnis,* 46 Kan. 109, 26 Pac. 453; *Railroad Co. v. Dalton,* 65 Kan. 661, 70 Pac. 645; *Manser v. Collins,* 69 Kan. 290, 76 Pac. 851.) It therefore becomes unnecessary to look further into the record for alleged error, because, in case we were to determine that the court erred in sustaining the demurrer, the judgment must nevertheless be affirmed on the ground that nothing but nominal damages were shown. The judgment is affirmed.

JOHNSTON, C. J., BURCH, MASON, SMITH, GRAVES, BENSON, JJ., concurring.

PORTER, J. (dissenting): I am unable to concur in the doctrine that damages may never be recovered for mental suffering except as an incident to some physical injury or damage to the person. This is the general rule as applied to cases of negligence, for two sufficient reasons: (1) Such damages are regarded as too remote to justify recovery in cases of negligence, because they could not reasonably have been anticipated to result from the accidental or unusual combination of circumstances. (2) The law looks with disfavor upon them because the proof of their existence lies often wholly within the breast of the one who claims to have suffered, and their allowance would open the door to fraud.

I have no quarrel with the rule as applied to cases arising out of ordinary negligence, but the reasons suggested for the rule have no application to a case of wil-

Shelton v. Bornt.

ful tort. The authorities quite generally agree that in a case like the present the plaintiff would be entitled to recover for disgrace and humiliation suffered by having her family and household goods put into the street, provided she first show that some actual damage was sustained by her. (*Moyer et al. v. Gordon,* 113 Ind. 282, 288, 14 N. E. 476; *Kimball v. Holmes,* 60 N. H. 163.) And the courts which refuse to uphold damages for mental suffering unaccompanied by injury to the person allow such damages when very slight or trivial injury to the person is shown.

In my opinion the rule has no application to a case where the defendant, taking the law into his own hands, has committed a wilful tort, and the injuries are the direct and proximate result of his wilful wrong. In support of this doctrine see the case of *Williams v. Underhill,* 63 N. Y. Supr. Ct., App. Div., 223, 71 N. Y. Supp. 291. The opinion recognized the rule laid down in *Mitchell v. Rochester Railway Co.,* 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604, that in an action to recover damages for alleged negligence, where the only injury resulting was fright and excitement producing a miscarriage and consequent illness, no recovery could be had, but said:

"No such rule of proximate damages is applicable to actions to recover damages for a wilful tort. . . . The reason for limiting liability in actions for negligence is founded in the principle of law governing such actions, viz., that the measure of damage shall be confined to the natural and probable consequences of the act or omission constituting the cause of action. The distinction between such a case and one founded upon a wilful tort, such as assault, is very clear." (Page 226.)

One of the authorities cited is the case of *Preiser v. Wielandt,* 48 N. Y. Supr. Ct., App. Div., 569, 62 N. Y. Supp. 890. That was a case where defendants had notified plaintiff to vacate certain premises and were informed by him that his wife was sick and unable to leave her bed without danger. A few days afterward

defendants' workmen commenced tearing down the house, which created a noise and caused plaintiff's wife to become excited and hysterical. Plaintiff removed his wife the next day, and her death resulted from the sickness a few days later. It was held that defendants were liable, although the deceased suffered no immediate physical injury and her death was due solely to fright and excitement. In the opinion it was said:

"The defendants had ample remedy by legal process for their summary removal, and so far as the assault upon the house was designed to accomplish that removal by force, the act was wrongful and unjustified." (Page 572.)

The opinion further said:

"The point is raised, however, by the respondents that under the decision in *Mitchell v. Rochester Railway Co.*, 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604, there can be no recovery because there was no actual, immediate personal injury suffered by Mrs. Preiser, and that her miscarriage and death were due solely to fright and excitement. The case referred to has no application to this one. It applies only to actions based on negligence and not to cases of wilful tort. In that case it was held that no recovery could be had for mere fright occasioned by negligence; and as no action would lie for the fright alone, it necessarily followed that none could be maintained merely because the fright was followed by serious consequences. If the act complained of was not in itself actionable, the gravity of the consequences would not make it so. In this case, however, the act of the defendants was in itself wrongful. It was a wilful and violent trespass upon the plaintiff's house, for which an action will lie; and if the death of the plaintiff's wife can be clearly and directly traced to it as a natural and necessary consequence which they might, or should, have reasonably anticipated, the defendants are liable even although no actual blow was struck in the course of the destruction of the building. The defendants knew her condition and the risk to her which was involved in their contemplated act, and it would be ridiculous to say that, without the shadow of a right, they could tear the house down from over her head with no lia-

Shelton v. Bornt.

bility for the consequences unless she chanced to be hit by a falling beam." (Page 572.)

After we have said, in the language of Mr. Chief Justice Johnston in the case of *Wilson v. Campbell*, 75 Kan. 159, 88 Pac. 548, 8 L. R. A., n. s., 426, followed in *Whitney v. Brown*, 75 Kan. 678, 90 Pac. 277, that "the court rightly told the jury that not even an owner has a right forceably to take real estate from the peaceable possession of another, no matter how justly he may be entitled to it, and that if Campbell was in the peaceable possession of the premises, and Wilson's men entered the premises when the doors were locked and removed his goods during his absence and against his will, and while his possession continued, it would constitute a forceable entry under the law of this state" (p. 162), I am unwilling to say to the landlords of the state: "You may take forceable possession of your real estate in the absence of the tenant holding over, you may dispossess his family and turn them into the street with no fear of being held liable for damages, provided that in so doing you take care not to injure his person or property. You are justified in taking the law into your own hands, and no matter how much fright, humiliation and disgrace your acts may occasion to the person or family of the dispossessed tenant you will not be liable therefor in an action for damages unless the tenant prove that he suffered some physical injury." It is said in volume 13 of the Cyclopedia of Law and Procedure, at page 45:

"In the absence of personal injury or aggravating circumstances a party is not entitled to recover damages for mental anguish in connection with injury done to his property; but where the acts complained of are wilful and wanton, and the element of malice is apparent, the courts have been inclined to allow damages for injured feelings."

Plaintiff in this case was not a trespasser, and while she had been served with notice to quit her refusal to leave the premises had not been persisted in for such a

length of time as to make an aggravated case of holding over or to furnish excuse for extreme measures on the part of the landlord. She had certain rights, including the right not to be forceably and unlawfully dispossessed. The law furnished the defendants ample remedies, and I think the evidence shows such a wilful tort on their part as to warrant the allowance of substantial damages for the humiliation and disgrace suffered by plaintiff which resulted directly from their wilful and wrongful acts.