No. 24,316.

DORA SCOTT, *Appellee*, v. JEFF COWAN, *Appellant*.

SYLLABUS BY THE COURT.

1. COLLISION—*Two Automobiles—Personal Injuries—Mental Suffering as an Element of Damages.* In an action for damages for personal injury, where mental suffering is an element of the physical pain or is induced by mutilation or disfigurement of the person, or is a necessary consequence of the physical pain or is the natural and proximate result of the physical injury, it may be considered as a proper element of damages.

2. SAME—*Evidence—Special Findings.* Rule followed, that when there is sufficient testimony to support the verdict and special findings of the jury, they will not be set aside.

3. SAME. The evidence examined and found sufficient to sustain the verdict and special findings; also, that the special findings are not so inconsistent with the general verdict or with one another as to warrant their being set aside.

4. SAME. The instructions examined and found to fairly state all the material issues to the jury.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed July 7, 1923. Affirmed.

*E. B. Morgan,* of Galena, and *V. J. Bowersock,* of Baxter Springs, for the appellant.

*C. A. McNeill,* of Columbus, and *Maurice McNeill,* of Galena, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: Defendant appeals from a judgment of $750 recovered by plaintiff for injuries sustained in an automobile collision.

The plaintiff alleged that the defendant was guilty of negligence; that "he failed to observe the rules of the roads, in that he failed to keep to the right of the road when about to meet the car plaintiff was in, and that he did not use reasonable care in keeping an outlook for the car plaintiff was in, that he carelessly and neglectfully ran said car at too great a rate of speed on said crowded thoroughfare, and neglectfully had but one light on said car, thereby making it impossible for him to properly see the road and avoid danger."

Defendant answered with a general denial, and alleged: "Said injury was the result of carelessness and negligence on the part of

Scott v. Cowan.

the driver of the automobile in which said plaintiff was riding, . . . in all of which said plaintiff knowingly participated and acquiesced, and said negligence contributed to and was the primary and proximate cause of the injury of said plaintiff, if any. That the automobile in which said plaintiff was at said time riding was being driven at a high and dangerous rate of speed, having regard for the width and condition of said road at said place; that no lookout was being kept or care being given to the perils of said road, and although the defendant was driving slow, and in a careful, prudent and cautious manner, well to the right side of said road; and the car in which said plaintiff was riding was carelessly and negligently driven to the left side of said road towards and against the car driven by said defendant with great force and violence thus causing the injury, if any, received by said plaintiff."

The defendant's principal contentions are: That the court erred in admitting incompetent evidence; that the verdict is not supported by the evidence; that the findings of the jury are inconsistent with the general verdict and with each other; that the court erred in instructing the jury.

1. The testimony showed that the cars met some two and a half miles east of Columbus, Kan., about 9 o'clock at night near a bridge or culvert on a main public highway. The plaintiff, who was riding in the front seat of a Chevrolet car driven by Marion Stonecipher, was thrown against the glass windshield, suffering severe cuts on both cheeks. A sister of Stonecipher was riding in the rear seat. The defendant was driving a Hudson Super Six touring car, containing, in addition to himself, five other persons.

The first complaint of defendant is that the court permitted plaintiff to testify as to the mental condition and anguish she suffered by reason of her disfigured condition; that she had experienced that feeling and humiliation ever since the injury; that, scarred as she was, and being in the profession (school teacher) she had a hesitancy because of her looks, and that it was hard for her to get up before a crowd.

The defendant argues that, "Mental anguish, to be an element of recovery, must be actual and not the result of imagination or unfounded apprehension" (17 C. J. 842) and that this evidence went simply to mental embarrassment which plaintiff claimed and which she anticipated in appearing before audiences.

In 17 C. J. 835, it is stated:

"According to the weight of authority, mental pain in contemplation of a permanent mutilation or disfigurement of the person may be considered as an element of damages."

"Disfigurement or mutilation of the body as the result of an injury to the person may be considered as a proper element of damage, although there is some difference of opinion as to the propriety of considering mental pain in contemplation thereof." (17 C. J. 843.)

In *Gray v. Washington Power Company*, 30 Wash. 665, in holding mental suffering arising from the contemplation of disfigurement caused by the negligence of another an element of damage, the court said:

"On this subject the authorities are somewhat divided, though the decided weight of authority, we think, is to the effect that compensation can be recovered for such damages. We also think that such decisions are sustained by the better reasoning. Some of the cases cited by appellant, while permitting compensation for mental suffering induced by physical pain, distinguish such mental suffering from suffering arising from causes other than physical pain, viz., such suffering as arises from the contemplation of a maimed body or deformed face; and the reason assigned is that this element of damage is too vague and indefinite to be susceptible of proof. But we think this discrimination cannot be maintained in sound reasoning, and that mental suffering which is induced by the relations of mind and body is as difficult to measure as mental suffering induced by mortification and disfigurement." (p. 674.)

The rule was early announced in Kansas that:

"Where mental suffering is an element of the physical pain, or is a necessary consequence of the physical pain, or is the natural and proximate result of the physical injury, then we suppose that damages for mental suffering may be recovered." (*City of Salina v. Trosper*, 27 Kan. 544, 564.)

This rule has been followed in numerous cases decided by this court. (*Railroad Co. v. Chance*, 57 Kan. 40, 45 Pac. 60; *Railway Co. v. Wade*, 73 Kan. 359, 85 Pac. 415; *Baisdrenghien v. Railway Co.*, 91 Kan. 730, 139 Pac. 428; *Ramey v. Telegraph Co.*, 94 Kan. 196, 146 Pac. 421; *Shelton v. Bornt*, 77 Kan. 1, 93 Pac. 341.)

2. A close examination of the record shows that on some points there was a sharp conflict in the evidence. It would serve no useful purpose to detail the evidence here. The jury saw and heard the witnesses and resolved the conflict in favor of the plaintiff. There was sufficient evidence to sustain the verdict, and under the familiar rule, this court will not disturb it.

3. The special questions and answers thereto were as follows:

"1. Was defendant guilty of any negligence alleged in plaintiff's petition,

Scott v. Cowan.

that contributed to and was the proximate cause of plaintiff's injuries?  A. Yes.

"2. Was the plaintiff guilty of any negligence, either by commission or omission that contributed to her injuries?  A. No.

"3. If you find from the evidence in this case that the defendant was guilty of negligence, please state in what that negligence consisted.  A. Defendant failed to keep to the right of road when about to meet the car in which plaintiff was riding.  Defendant neglectfully had but one light burning on said car thereby making it impossible for the driver of the car in which plaintiff was riding to properly see the car of defendant and to avoid danger.

"4. At what rate of speed was the car in which plaintiff was riding being driven at the time of the accident?  A. Twelve miles.

"5. Was the car of the defendant in motion at the time of the accident? A. Yes.

"6. If you answer the last question "yes," then state the rate of speed it was traveling at the time.  A. Eight or ten miles.

"7. How wide was the culvert at which this accident occurred?  A. Sixteen feet eight inches.

"8. How far was the defendant's right rear wheel from the north side of the culvert?  A. Twelve inches.

"9. Where were the front wheels of the defendant's car at the time of the accident, with reference to the north edge of the traveled portion of the road? A. Right front wheel in north edge of main traveled portion of road.

"10. Was there sufficient space on the south side of the defendant's car for the car in which plaintiff was riding to have safely passed?  A. Not at the time of accident."

The defendant contends that the answers given by the jury were not fair and were not consistently answered according to the evidence; that certain of the findings should have been set aside. Plaintiff's testimony was to the effect that defendant's car was traveling at the rate of thirty miles an hour.  Defendant testified that just before the collision he brought his car to a full stop.  The jury had not only the conflicting statements of witnesses to consider, but all the circumstances surrounding the collision.  It was, therefore, not beyond their province from all the testimony in the case, to find (No. 6) that defendant's car was, at the time of the collision, traveling at the rate of eight or ten miles.  The jury answered in finding No. 10 that there was not sufficient space on the south side of defendant's car for the car in which plaintiff was riding to have safely passed at the time of the accident.  The testimony showed that the culvert was 16 feet 8 inches wide; that defendant's car was moving west across the culvert; that the accident occurred west of the culvert; that at the time of the accident the right front wheel of defendant's car was in the north edge of the main traveled

portion of the road. There is nothing in the record to show the width of the main traveled portion of the road just west of the culvert. Apparently there was a difference between the width of the road and what was known as the main traveled portion of the road. Marion Stonecipher, in whose car the plaintiff was riding, testified that the road west of the culvert was wider than the culvert but appears not to have testified with reference to the width of the main traveled portion of the road. It probably was not as wide as the culvert and probably was as wide as the average automobile or wagon traveled road. The right front wheel of defendant's car was in the north side of the main traveled road. Defendant's car had but one light burning. There was testimony also that the car in which plaintiff was riding turned out to the right and if it had proceeded directly east it would have struck the post on the south end of the culvert.

Under the circumstances, the jury may have concluded that the main traveled road narrowed west of the culvert; that defendant's car was in the main traveled road, as the result of which, according to the evidence, defendant's car struck the car in which plaintiff was riding, just back of the front wheel. Under all the circumstances we are unable to say that the findings of the jury were not justified by the evidence or are so inconsistent with one another as to set them aside.

4. The defendant complains of the refusal of the court to give certain requested instructions. The matters covered by the instructions requested by the defendant were sufficiently treated by the court in the instructions given. Taken as a whole, the instructions fairly stated all the material issues to the jury.

Under all the circumstances of the case, it cannot be said that the verdict of the jury was excessive. We find no reversible error. The judgment is, therefore, affirmed.

HARVEY, J. (dissenting): A general verdict for plaintiff cannot be supported under the special findings in this case. The findings show the culvert near which the collision occurred is sixteen feet, eight inches wide (No. 7), and the defendant's right rear wheel, which was still on or had just passed the culvert, was twelve inches from the north side of the culvert (No. 8), which was defendant's right-hand side of the road, and the right front wheel in the north edge of the main traveled portion of the road (No. 9), which was

wider than the culvert as testified to by Marion Stonecipher, driver of the car in which plaintiff was riding (p. 22 abs). These findings show conclusively that the defendant was as far to his right of the traveled way as it was possible or safe for him to be. They further show that there was ten feet or more for plaintiff to pass him in safety on what would be plaintiff's right-hand side of the road. Yet the jury found (No. 10) that plaintiff did not have space on the south side of defendant's car to pass in safety. This, of course, is a physical impossibility if findings Nos. 7, 8 and 9 are correct. The evidence supports findings Nos. 7, 8 and 9. Defendant's motion to set aside finding No. 10 should have been sustained, as there was no evidence to support it. It is clear from findings Nos. 7, 8 and 9 that the collision occurred by the driver of the car in which plaintiff was riding getting over to his left-hand side of the road and running into the defendant, who was on his right-hand side, and as far over as he could get. Such being true, there should be no recovery.