No. 56,047

MICHAEL A. BOWMAN, *Appellant and Cross-Appellee,* v. HAROLD
A. DOHERTY, *Appellee and Cross-Appellant.*
(686 P.2d 112)

Opinion filed July 13, 1984.

*Patrick Nichols,* of Topeka, argued the cause and was on the briefs for appellant and cross-appellee.

*Alan V. Johnson,* of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, argued the cause, and *Myron L. Listrom,* of the same firm, was with him on the brief for appellee and cross-appellant.

The opinion of the court was delivered by

LOCKETT, J.: This is a legal malpractice case tried to a jury in the Shawnee County District Court. The plaintiff, Michael Bowman, appealed the trial court's granting defendant's motion for partial summary judgment, and the defendant, Harold Doherty, cross-appealed the jury's finding of legal malpractice.

Michael Bowman was arrested for giving a worthless check on December 27, 1978. He was released on bond and ordered to appear in court on January 15, 1979. Bowman arrived at the initial appearance without an attorney. The judge informed the plaintiff of his right to an attorney and continued the case until January 22, 1979.

On either January 16 or 17, 1979, the plaintiff left on a skiing trip to Colorado. On January 19, from a hotel in Colorado, Bowman telephoned Harold Doherty, a Topeka attorney, who had helped Bowman with previous legal matters. The plaintiff claimed he retained Doherty to handle this case. Bowman advised Doherty of his upcoming court appearance. Doherty told

Bowman he would take care of the matter and to contact him when Bowman returned from Colorado. Doherty called the district attorney's office and made arrangements with one of the deputy district attorneys for the case to be continued for two weeks. When Bowman returned from Colorado, he spoke with Doherty, who assured Bowman the matter would be taken care of.

No continuance was arranged for with the district court. Bowman and Doherty failed to appear in court on January 22, 1979. The judge declared a bond forfeiture and ordered a warrant be issued for Bowman's arrest.

Bowman returned to Topeka from Colorado sometime during the next week following his telephone call to Doherty. Upon his return, Bowman called Doherty again, and the parties agreed to meet to discuss the case. A day or two later Bowman met with Doherty in his office to discuss the matter. According to Bowman, Doherty said, "I will take care of it. This is no problem, don't worry about it."

Several weeks later, in late February or early March of 1979, Bowman received a letter from the sheriff's office, stating he was in contempt of court for failure to appear on January 22. The letter advised Bowman would be arrested if he did not present himself at the Shawnee County Courthouse. After receiving the letter, Bowman called Doherty and described the letter to him. Doherty told Bowman to come in to his office and bring the letter with him. Bowman went to Doherty's office and showed him the letter. According to Bowman, Doherty said, "I know what this is, I will take care of it." Doherty took no action.

Approximately one month later, on April 13, 1979, Bowman was arrested at his residence on a charge of aggravated failure to appear. Upon his arrival at the courthouse, Bowman was allowed to make a telephone call to Mr. Doherty, but was unable to reach him. Bowman then was booked into the county jail where he was held for two or three hours. Bowman eventually called his father who came down to the courthouse to post bond for his son's release. Bowman was handcuffed for three or four minutes while he was moved from his jail cell to the room where the bond papers were signed. The handcuffs caused Bowman to suffer some physical pain.

Later that same day, after Bowman had been released from jail,

Bowman's father telephoned Doherty, informed him of the situation, and asked to have an appointment with Doherty. Doherty told Bowman's father to come to his office in the morning. Early the next morning (April 14), both Bowman and his father met with Doherty in his office. After discussing the problem, Bowman's father asked Doherty if he was going to represent Bowman. Doherty, at that point, agreed to represent Bowman in both cases. Bowman's father then asked Doherty what needed to be done to take care of the cases. After reviewing the court papers, Doherty replied that they needed to appear at the next docket which was May 1, 1979. Doherty promised to appear in court for Bowman on May 1.

Sometime after the April 14 meeting, Doherty arranged to have both of Bowman's cases continued from the May 1 docket to the May 10 docket. Bowman and his father were notified by Doherty that the cases had been continued. Father and son appeared in court May 10. Doherty did not appear. Judge Hope recommended that Bowman and his father hire another attorney, which they did. Once the new attorney had been hired, both of Bowman's cases were resolved.

There was a sharp conflict in the testimony at trial whether or not Doherty had agreed to represent Bowman. Bowman claimed Doherty promised "to take care of" Bowman's case. Doherty testified he agreed to represent Bowman only if Bowman paid Doherty $100.00 in advance. Bowman never came up with the $100.00 fee, and therefore Doherty never undertook to represent Bowman.

In regard to the telephone call by Bowman from Colorado on January 19, Doherty testified that Bowman asked him to obtain a continuance of the bad check case "as a favor" for Bowman. Doherty told Bowman that he would "continue it for him."

At the meeting with Bowman following his return from Colorado, Doherty testified he told Bowman the case could be taken care of. Doherty meant by this that a post-dated check was involved, and that he had learned from the assistant district attorney they did not prosecute cases involving post-dated checks. Doherty told Bowman that it would cost $100.00 for Doherty to dispose of the case, and that Doherty would represent Bowman when Doherty received the $100.00.

Doherty testified that he instructed Bowman that the letter

from the sheriff's office required Bowman to go over to the courthouse and make bond, or they would arrest him. Doherty explained to Bowman that Doherty could not make Bowman's bond, since a lawyer is prohibited by statute from posting bond in the county in which he lives.

Doherty denied that he ever told Bowman's father that he would take care of Bowman's cases. According to Doherty, he only told Bowman's father that the cases could be taken care of through an agreement with the district attorney. Doherty denied discussing the $100.00 fee with Bowman's father during the meeting. However, Doherty testified after the meeting was over, Bowman came back to Doherty's office without his father. Doherty again explained to Bowman that he would get the case dismissed if Bowman would pay him the $100.00 retainer fee.

At the conclusion of the trial, the jury found that both Bowman and Doherty were negligent, and it assessed the comparative fault among the parties to the transaction as follows: Bowman 30%, Doherty 50%, and the assistant district attorney who Doherty had contacted to continue the case 20%. The plaintiff was awarded $100.00 in actual damages for physical pain and suffering, and $900.00 in punitive damages. The jury refused to award the plaintiff any damages for loss of personal freedom. After apportioning the negligence, the trial court entered judgment in favor of the plaintiff in the amount of $50.00 in actual damages and the total amount of punitive damages of $900.00. The plaintiff appealed and the defendant cross-appealed.

Prior to trial, Doherty filed a motion for partial summary judgment on all nonpecuniary damages which Bowman was seeking to recover. Those nonpecuniary damages were physical pain and suffering, loss of personal freedom, mental pain and suffering, humiliation, and punitive damages. The parties extensively briefed whether or not such damages could be recovered.

Based on the facts, the trial court denied Bowman's claim for mental damages. The trial court reasoned that Bowman's mental suffering and humiliation were not elements or concomitants of any physical injury. The trial court stated:

"Kansas courts appear to require physical injury as a prerequisite to recovery for mental suffering, and even then recovery is not freely allowed.

"*City of Salina v. Trosper*, 27 Kan. 544 (1882), appears to be the earliest case to address the issue and while the general attitudes of commentators and some

courts toward damage awards for mental suffering may have changed, *Trosper* has never been disapproved but has been cited with approval several times since its writing.

"The plaintiff in *Trosper* sued the city for injuries suffered when he fell into an open hole in the sidewalk. The jury awarded damages for 'physical pain and mental suffering.' In reversing the award, the court stated as follows:

" 'Upon this finding arises the question, whether anything can be properly recovered for mental suffering under any circumstances. We think it cannot, except where the mental suffering is the natural, legitimate and proximate consequence of the physical injury. We do not think that anything can be recovered for mental suffering as a distinct element of damages in addition to bodily suffering.

. . . .

" 'Where mental suffering is an element of the physical pain, or is a necessary consequence of the physical pain, or is the natural and proximate result of the physical injury, then, we suppose that damages for mental suffering may be recovered, even in cases of this kind.'

"The physical pain alleged to have been suffered [by Bowman] is that normally attending arrest, handcuffing, fingerprinting and incarceration. (Uncontroverted fact No. 8.) There is no allegation of excessive treatment by Sheriff's officers. . . .

"*Under these circumstances, the Court believes the alleged mental suffering is not the 'natural' or 'proximate' result of any alleged physical injury, but is instead the result of the arrest and incarceration generally. It is not 'an element of, or . . . a necessary consequence of' the physical pain itself.*" Emphasis supplied.

The trial court recognized the rule in *City of Salina v. Trosper*, 27 Kan. 544 (1882), had been followed in numerous subsequent cases. See, *e.g., Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 274, 662 P.2d 1214 (1983); *Connell v. Norton Coca-Cola Bottling Co.*, 187 Kan. 393, 395, 357 P.2d 804 (1960); *Hogan v. Santa Fe Trail Transportation Co.*, 148 Kan. 720, 728, 85 P.2d 28 (1938), and numerous cases cited therein; *Clemm v. Atchison, T. & S. F. Rly. Co.*, 126 Kan. 181, 184, 268 Pac. 103 (1928); *Scott v. Cowan*, 114 Kan. 32, 217 Pac. 698 (1923); *Shelton v. Bornt*, 77 Kan. 1, 93 Pac. 341 (1908); *Cole v. Gray*, 70 Kan. 705, 79 Pac. 654 (1905); *Railroad Co. v. Dalton*, 65 Kan. 661, 70 Pac. 645 (1902). In the last three cases before this court, we determined as a matter of law that the plaintiff was not entitled to recover damages for mental suffering because of the absence of any physical injury.

The rationale for this rule is twofold. First, damages for mental suffering are regarded as too remote to justify recovery in negligence cases, since they could not reasonably have been antici-

pated to result from the accidental or unusual combination of circumstances. Second, the law looks with disfavor upon such damages because the proof of their existence often lies wholly within the one who claims to have suffered, and their allowance would open the door to fraud. *Shelton v. Bornt,* 77 Kan. at 4; Restatement (Second) of Torts § 436 A (1964), comment b.

The court's reliance on *Trosper* is misplaced. *Trosper* was a simple negligence case which applied the general rule used in cases of unintentional negligence—that mental suffering unaccompanied by bodily injury is not a ground for recovery. The general rule is not applicable in cases of a wrong where the act is wanton or willful or where the act is committed with malice and intended to cause mental distress. Some of the exceptions to the general rule requiring contemporaneous bodily injury include assault, illegal arrest, malicious prosecution, false imprisonment, seduction and slander. *Lonergan v. Small,* 81 Kan. 48, 105 Pac. 27 (1909). The general rule of negligence has no application to willful or wanton wrongs. A willful wrong involves an intentional act and intentional injury. A wanton wrong involves an intentional act but not an intentional injury; the act is intentional and purposeful, but the consequences of the act are not.

The plaintiff does not contend he suffered physical injury. He argues the defendant's conduct was wanton. From the filing of the petition, through discovery and pretrial, Bowman had sought punitive damages for Doherty's conduct claiming a reckless disregard of known consequences creates liability beyond negligence—it is wanton conduct. Wantonness is distinct from negligence and differs in kind. *Kniffen v. Hercules Powder Co.,* 164 Kan. 196, 188 P.2d 980 (1948). Wanton conduct is distinguished from a mere lack of due care by the fact that the actor realized the imminence of injury to others from his acts and refrained from taking steps to prevent the injury. This reckless disregard or complete indifference rises substantially beyond mere negligence. PIK Civ. 2d 3.02; *Kniffen,* 164 Kan. at 206.

In *Britt v. Allen County Community Jr. College,* 230 Kan. 502, 509, 638 P.2d 914 (1982), Justice Fromme wrote:

"In *Vaughn v. Murray,* 214 Kan. 456, 460, 521 P.2d 262 (1974), the test of gross and wanton negligence was iterated:

" 'Proof of a willingness to injure is not necessary in establishing gross and wanton negligence. This is true because a wanton act is something more than ordinary negligence but it is something less than willful injury. To constitute

wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act. It is sufficient if it indicates a reckless disregard for the rights of others with a total indifference to the natural consequences of the actions of the negligent party. (*Saunders v. Shaver,* 190 Kan. 699, 701, 378 P.2d 70; *Mann v. Good,* 202 Kan. 631, 634, 451 P.2d 233; *Pickens v. Maxwell,* 203 Kan. 559, 456 P.2d 4.)"

Chief Justice Schroeder reviewed the law on negligent infliction of emotional distress in the recent case of *Hoard v. Shawnee Mission Medical Center,* 233 Kan. at 274:

"It has long been the general rule in Kansas that there can be no recovery for emotional distress suffered by the plaintiff which is caused by the negligence of the defendant unless it is accompanied by or results in physical injury to the plaintiff. *Hough v. Atchison, T. & S. F. Rly. Co.,* 133 Kan. 757, Syl. ¶ 4, 3 P.2d 499 (1931); *Clemm v. Atchison, T. & S. F. Rly. Co.,* 126 Kan. 181, 184, 268 Pac. 103 (1928); *Whitsel v. Watts,* 98 Kan. 508, 509, 159 Pac. 401 (1916); *Lonergan v. Small,* 81 Kan. 48, 50-51, 105 Pac. 27 (1909); *A. T. & S. F. Rld. Co. v. McGinnis,* 46 Kan. 109, 113, 26 Pac. 453 (1891). See also Prosser, Law of Torts § 54, at 328-29 (4th ed. 1971); 38 Am. Jur. 2d, Fright, Shock and Mental Disturbance § 1; Annot., 64 A.L.R.2d 100, §§ 7, 9, 11. This rule, however, does not apply where the injurious conduct is willful or wanton, or the defendant acts with intent to injure. *Lantz v. City of Lawrence,* 232 Kan. 492, 500, 657 P.2d 539 (1983); *Lonergan v. Small,* 81 Kan. at 51; 38 Am. Jur. 2d, Fright, Shock and Mental Disturbance §§ 4, 17; 64 A.L.R.2d 100, § 8."

Damages are not allowed for emotional distress when the record is devoid of evidence showing a specific act which inflicted emotional harm. The jury determined Doherty had been retained to handle Bowman's case and failed to do so. Doherty, an attorney, should have known full well that his client's bond would be forfeited and his client placed in jail if the matter was not properly handled. The act of the attorney which led to the injury suffered by his client was the failure of the attorney to act, which caused the client to be placed in jail and deprived of his freedom. One being negligently deprived of his freedom suffers an injury which could cause mental distress.

Plaintiff claims that the question of whether Doherty's inaction was wanton was a question of fact to be determined by a jury. The general rule is if reasonable minds could differ, then whether a person acted wantonly is a question of fact to be determined by the trier of fact. *Lantz v. City of Lawrence,* 232 Kan. 492, 501, 657 P.2d 539 (1983). Reasonable minds could differ on whether the defendant acted in a wanton manner. The jury believed the defendant took insufficient action to obtain a

continuance in the plaintiff's criminal case. Without a continuance, plaintiff's arrest for his failure to appear was foreseeable to a lawyer. Whether a client was injured and suffered mental distress when deprived of his freedom because his attorney failed to act or acted in a wanton manner is a question of fact for the jury to determine.

The extent of plaintiff's emotional distress was not fully developed at trial because of the partial summary judgment before trial against the plaintiff on the issue. A court should be cautious in granting a motion for summary judgment when the resolution of the dispositive issue necessitates a determination of the state of mind of one or more of the parties. *Credit Union of Amer. v. Myers,* 234 Kan. 773, Syl. ¶ 6, 676 P.2d 99 (1984). The trial court erred in granting partial summary judgment.

The defendant moved for a directed verdict after the close of the plaintiff's evidence, and again at the close of the defendant's evidence. Doherty argued to the trial court that Bowman failed to present expert testimony to support the claim that defendant deviated from the appropriate standard of care for the attorney. The defendant contends on appeal the trial court should have granted the directed verdict on this ground.

In ruling on a motion for directed verdict pursuant to K.S.A. 60-250, the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where the evidence is such that reasonable minds could reach a different conclusion thereon, the motion must be denied and the matter submitted to the jury. The same basic rule governs appellate review of a motion for directed verdict. *Ettus v. Orkin Exterminating Co.,* 233 Kan. 555, 665 P.2d 730 (1983).

An attorney is obligated to his client to use reasonable and ordinary care and diligence in the handling of cases he undertakes, to use his best judgment, and to exercise that reasonable degree of learning, skill and experience which is ordinarily possessed by other attorneys in his community. The duty of an attorney to exercise reasonable and ordinary care and discretion remains the same for all attorneys, but what constitutes negligence in a particular situation is judged by the professional standards of the particular area of the law in which the practitioner is involved. Here, Doherty was involved in the practice of criminal law.

Defendant alleges where a client claims his attorney erred in the handling of his client's case, expert legal testimony as to the accepted standard for handling such a case is required for the proper determination of negligence by the trier of facts. Expert testimony is generally required and may be used to prove the standard of care by which the professional actions of the attorney are measured and whether the attorney deviated from the appropriate standard. Expert testimony is required with respect to a question an ordinary person is not equipped by common knowledge and skill to judge.

There is a common knowledge exception to the rule requiring expert testimony in malpractice cases. Expert testimony is not necessary where the breach of duty on the part of the attorney, or his failure to use due care, is so clear or obvious that the trier of fact may find a deviation from the appropriate standard of the legal profession from its common knowledge. *Webb v. Lungstrum*, 223 Kan. 487, 575 P.2d 22 (1978).

The trial court twice denied the defendant's motion for a directed verdict finding the plaintiff's evidence placed the question of professional negligence within the common knowledge of the jury. We agree. Doherty was hired to represent Bowman in an alleged criminal check case. Whether or not Bowman's loss of freedom, for failure to appear before the court when required, was due to Doherty's deviation from the appropriate standard for an attorney fell within the common knowledge exception to the rule requiring expert legal testimony.

The defendant contends the plaintiff is not entitled to punitive damages because his action sounds in contract. Legal and medical malpractice generally constitute both a tort and a breach of contract. Ordinarily an action for liability of an attorney on the grounds of negligence for failure to discharge his professional duty to a client rests on the employment contract and therefore is contractual in nature. Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort. *Chavez, Executrix v. Saums,* 1 Kan. App. 2d 564, 571 P.2d 62 (1977).

Lawyers, like other professionals, are required to have and exercise the learning and skill ordinarily possessed by members of their profession in the community. The trial court correctly overruled the defendant's motions for directed verdicts by determining that both a legal and contractual obligation could have been breached. Plaintiff's action sounded in tort.

Defendant claims the trial court erred in allowing judgment for the full amount of the punitive damages award by the jury against Doherty where only 50% of the causal fault was assessed against Doherty under comparative negligence. Defendant argues that the punitive damages awarded to Bowman should be reduced to the 50% comparative fault attributed to Doherty.

The jury assessed 50% of the causal fault against Doherty, and awarded Bowman $100.00 in actual damages and $900.00 in punitive damages. The trial court reduced the jury's award of *actual* damages by the percentages of fault attributable to Bowman (30%) and to the phantom party, the assistant district attorney (20%). However, the court did not reduce the jury's award of *punitive* damages by the percentages of fault attributable to Bowman and the phantom party; instead, the court entered judgment against Doherty for the full amount of the jury's award of $900.00.

From a review of the cases of states which have addressed this issue, various approaches to this question emerge. Some states, relying on the essential difference between wanton conduct and negligence refuse to allow any damages, actual or exemplary, to be reduced by comparative fault. Other courts refuse to apportion punitive damage awards, keeping intact the policy of punishing wanton or intentional acts. One state, Texas, allows apportionment of punitive damages.

*Amoco Pipeline Co. v. Montgomery*, 487 F. Supp. 1268 (W.D. Okla. 1980), examined the law of Oklahoma, Wisconsin and California and compared fault without apportioning punitive damages. Separate consideration was given in that case to punitive damages. The court refused to reduce the punitive damages. The court stated that the nature of punitive damages was "of punishment imposed for the benefit of society, as a restraint upon the transgressor and as a warning and example to deter him and others from committing similar offenses in the future." 487

F. Supp. at 1272. The court relied on *Tampa Electric Co. v. Stone & Webster Engineering Corp.*, 367 F. Supp. 27, 38 (M.D. Fla. 1973), which reached a similar conclusion.

The *Tampa* case was another situation in which punitive damages were sought based on allegations of gross negligence, not wanton misconduct. The court noted that the equitable course was to allow the diminished recovery of compensatory damages. Nevertheless, the court refused to apportion exemplary damages by comparative fault.

Both the *Amoco* and *Tampa* cases rely on the same doctrinal principle: "This procedure will equitably divide responsibility for claimed losses while keeping intact the policy of punishing wanton acts." 367 F.2d at 38.

Similar results are found in other cases. In *Comeau v. Lucas,* 90 App. Div. 2d 674, 455 N.Y.S.2d 871 (1982), examining comparative negligence principles and punitive damages, the court stated, "We note only that punitive damages are not subject to apportionment." 90 App. Div. 2d at 675. In *Sturm, Ruger & Co., Inc. v. Day,* 615 P.2d 621 (Alaska 1980), the court entered judgment for punitive damages while remanding the case for trial on issues of comparative fault. Since judgment was entered prior to comparative determination, no apportionment was contemplated.

It is Doherty's contention that the trial court erred in failing to reduce the jury's award of punitive damages by the percentages of fault attributable to Bowman and the assistant district attorney. This contention raises the following issue: Where punitive damages are awarded based on a finding of wanton conduct, is the defendant's liability for payment of punitive damages limited by K.S.A. 60-258a to the percentage of causal fault attributable to him?

The intent and purpose of the legislature in adopting the comparative negligence statute, K.S.A. 60-258a, was to impose individual liability for damages based on the proportionate fault of all the parties to an occurrence which gave rise to the injuries and damages, whether or not those persons are joined as parties to the action. Punitive damages are allowed in Kansas, not because of any special merit of the injured party's case, but are imposed to punish the wrongdoer for malicious, vindictive or willful and wanton invasion of the injured party's rights. The

purpose of punitive damages is to restrain and deter others from the commission of like wrongs. Punitive damages may be recovered for a breach of a contract when an independent tort is proven. *Guaranty Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 232 Kan. 76, 79, 652 P.2d 665 (1982).

In this case the jury was instructed to compare the negligence of the parties pursuant to K.S.A. 60-258a, which it did, and then to assign a percentage of fault to each party after determining Bowman's total damage. The jury, under the trial court's instruction, was finally required to determine whether Bowman should be awarded punitive damages to punish Doherty as a wrongdoer. The jury determined Doherty was a wrongdoer and assigned the sum of $900.00 as punishment to Doherty. The trial court properly refused to reduce the punishment assessed by the jury against Doherty's conduct by the negligent fault apportionment assigned all the parties to the occurrence.

An award of punitive damages is to punish the wrongdoer, not to compensate for the wrong. Comparative negligence focuses on the harm suffered and proportionate fault of all the parties to the occurrence. Considerations are different in assessing punitive damages from those assuring the injured party proper compensation. Punitive damages and comparative fault are separate. The trial judge correctly refused to apportion the punitive damages assessed against the defendant by the percentage of fault attributed to the parties under the comparative negligence statute, K.S.A. 60-258a.

Other issues raised by the parties need not be discussed since the case must be retried. The judgment of the trial court is reversed and the case remanded for a new trial.

HOLMES, J., not participating.