No. 30,071.

C. F. HOUGH, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

(3 P. 2d 499.)

Opinion filed October 10, 1931.

*William R. Smith, Alfred A. Scott* and *C. J. Putt*, all of Topeka, for the appellant.

*E. J. Taggart* and *John Bradley*, both of Wellington, *W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *William E. Cunningham*, all of Arkansas City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: In this action C. F. Hough recovered a judgment for damages in the sum of $1,850 against the Atchison, Topeka & Santa Fe Railway Company in a crossing accident. Defendant appeals.

Plaintiff was personally injured and the automobile in which he was riding was damaged at a railroad crossing in the city of Mulvane, by an act of the defendant in backing a string of freight cars against him on a dark night while he was driving over the tracks. He alleged that the defendant negligently failed to have a light of any kind on the advancing car that struck him; that there was no brakeman or flagman at the crossing to give warnings to motorists or travelers; that its cars were not equipped with warning devices properly lighted to give persons using the crossing notice of the approach of cars; that those operating the cars failed to sound a bell or whistle to warn the plaintiff of the approach of the string of cars in the nighttime; that nothing was done by defendant to ascertain whether plaintiff or anyone else was passing over the crossing when the cars approached; that the crossing was not properly lighted, and that on the whole defendant failed to use reasonable care to protect travelers on the highway from accidental injury. Defendant denied that its negligence caused the injury sustained and that the injurious results of the accident were caused by the negligence of the plaintiff in failing to take care for his own safety.

It appears that on the night of the accident his wife and another lady had driven in an automobile to a neighboring town to attend a club meeting, and as they had not returned at midnight, plaintiff in another automobile started out to discover the cause of the delay. He drove out in his automobile in the search, and had not gone far when he met his wife returning, whereupon he turned about and followed her into Mulvane. On reaching the crossing, what was called the California fast train was on one of the six tracks that crossed that street, and there was a brakeman or flagman there with a lantern flagging the crossing. He signaled plaintiff's wife to stop and she and the plaintiff brought their cars to a standstill, and shortly the train backed away from the crossing, and the flagman, climbing on the train, disappeared. There is testimony to the effect that plaintiff and his wife looked up and down the railroad tracks and saw no indication of trains or cars approaching, whereupon the plaintiff's wife drove her automobile across the tracks safely and plaintiff, who was about forty feet behind her, started over the crossing when a string of nine cars was shoved out of the darkness without lights, the sounding of a whistle or ringing of a bell, and struck plaintiff's automobile.

The testimony shows that the night of the accident was a very

dark one. There was what is called a wigwag appliance near the crossing which, it is conceded, was in operation at the time of the accident and on which there was a dim red light and a signal gong ringing. There were no lights near the crossing. The jury decided in favor of the plaintiff and made findings as follows:

"1. Did the plaintiff see the wigwag lights and gong in operation before he drove on the tracks? A. Yes.

"2. As the plaintiff crossed the several tracks in question was the wigwag red light burning and the signal gong ringing? A. Yes.

"3. Did plaintiff, after crossing first track from west side, stop at any time before accident occurred? A. No.

"4. After the plaintiff had started across the tracks and before driving upon the track where the accident occurred, if he had looked, could he have seen a string of freight cars backing south on said track? A. No.

"5. If your answer to the preceding question is in the negative, state what prevented him seeing the approach of said string of box cars before he drove upon the track. A. Insufficient light.

"6. Was the plaintiff well acquainted with the crossing in question and the general use to which defendant put its tracks at that place? A. Yes.

"7. Could the plaintiff have stopped his car within three feet as he was approaching the track where the accident occurred? A. Yes.

"8. If you find the defendant was negligent in such a way as to cause the plaintiff injuries, state what act or acts, omission or omissions on the part of the defendant constituted such negligence. A. Insufficient light, no flagman at crossing and no visible light on approaching car."

The principal question presented by the defendant is that the injury and loss sustained by plaintiff was due to his own negligence. The negligence attributed to plaintiff is based mainly on the fact that the wigwag was in operation and the gong thereon ringing when plaintiff undertook to drive across the tracks laid over the street. It is argued that the wigwag and gong in operation was a notice to plaintiff that there was a train in the vicinity and that he should have waited until the bell stopped ringing. The wigwag with a bell ringing is not always a certain signal that a train is approaching a crossing or that there is a present danger in passing the crossing. A moving or standing train in any part of the block would start the operation of the bell and continue it as long as the car was within the zone. The attachments were such that a train standing or moving in the zone as much as 1,200 feet away from the crossing would cause the ringing of the bell, and the appliance might be in operation a considerable time without a train approaching the crossing or even an intention to propel it over the crossing. The ringing of that bell was, of course, notice to the

traveler that a train was moving or standing somewhere within the block, and warned him to look out for trains approaching the crossing, but did not require him to wait there indefinitely while the bell was ringing. The sight of a railroad track is an admonition to a traveler to look out for his own safety before entering upon the crossing, and likewise the wigwag was a warning, but if the train is left standing in the zone of the automatic wigwag and bell, how long should the traveler wait before attempting to cross? It appears that shortly before the accident the train crew operating the string of cars which struck plaintiff's automobile had left the cars and gone to lunch. If the cars they were operating were left within the block and the bell was continually ringing for a half hour, while the crew was eating lunch, would it be regarded as a reasonable requirement that plaintiff should wait for the crew to return and move the cars over the crossing? The ringing of the bell may, as we have seen, constitute a warning of danger. It cannot be regarded as conclusive of the contributory negligence of plaintiff precluding a recovery. In *Frank v. Reading Co.*, 297 Pa. 233, it was said:

"While the ringing of a bell at a crossing would no doubt warn a driver of danger, it cannot be taken as a fact concluding an injured person's right to recover. Its presence in operation does not relieve the carrier from giving the customary notice of the approaching train. These bells ring from other causes. They may be set off by a shifting movement of a train as well as by a train that has passed or is about to pass, or by a short circuit, or again by any train that is within the electrical contact on either side. Here defendant's witness says the train on the siding had started the bell, though it had not passed the crossing. The bell was ringing before and after the train causing the injury went by. For these reasons the ringing of a bell at the crossing does not give adequate and certain warning of the approach of a train, on which the traveling public has a right to depend. (*Gerg v. P. R. R. Co.*, 254 Pa. 316, 320.) Evidence as to ringing of crossing bells may be shown as proof of contributory negligence, but is ordinarily for the jury. Such evidence cannot be accepted as showing that defendant has discharged its duty, nor is it conclusive that a pedestrian or a driver must know a train is coming and should be governed accordingly. Here there is no evidence to show the ringing of this particular bell came from the approach of the train that caused the accident." (p. 237.)

Before entering the crossing it was incumbent on the plaintiff to exercise vigilant care for his safety, a care commensurate with the perils of the situation. Plaintiff, however, had a right to presume that defendant would give the customary warnings at a crossing

and exercise due caution in approaching the much-traveled crossing and was not bound to anticipate that defendant would act without reasonable caution or with culpable' negligence.

Under the testimony and the findings of the jury, can it be said that plaintiff's lack of ordinary care prevents a recovery? To constitute contributory negligence, plaintiff must have done something or omitted to do something which an ordinarily prudent person would not have done or omitted. When plaintiff came to the crossing he saw a man flagging for a train that shortly moved on. The flagman, it appears, moved on with that train. There was no one there to flag for the backing string' of cars that caused the injury. From the evidence it is inferable that plaintiff took precaution to wait for about four minutes before venturing over the crossing, during which time he was looking and listening for trains or moving cars. In speaking of the action of his wife and himself after the freight train moved on, he testified:

"We waited until this train got into the yards pretty well, then we looked; I did, especially. I looked and listened to be sure there was nothing else crossing those tracks in any way. I then proceeded, following Mrs. Hough across the tracks. I might have been 35 or 40 feet back of her. . . . Of course, I don't know anything about her having looked and listened. I looked before I started across these tracks. I looked in both directions. I did not see a train in either direction. I did not see any light to indicate an approaching train from either direction. There was no whistle or bell sounded. There was no warning whatever given of the approach of any train towards that crossing."

In view of the evidence, which was apparently believed by the jury, it was sufficient to show that plaintiff exercised ordinary care for his safety. At least it is sufficient to make the matter of his contributory negligence a question of fact for the jury. (*Fike v. Railway Co.*, 90 Kan. 409, 133 Pac. 871; *Juznik v. Railway Co.*, 109 Kan. 359, 199 Pac. 90.)

Enough has been already stated to warrant the finding that the defendant was negligent in backing over the crossing as it did, and that its negligence was the proximate cause of the injury inflicted. In approaching a busy traffic way on a dark night, without lights, and without sounding a whistle or bell, or precaution other than a wigwag, fairly tends to sustain the charge of defendant's negligence. There was some conflict in the evidence as to what was done and omitted to be done at the crossing, but the jury has settled the conflict by its findings and verdict.

Some complaint is made of the instructions given and refused by the court. It is said that they are vague and indefinite in some particulars, but a reading of the charge satisfies us that it fairly presented the issues in the case to the jury and is not open to any just criticism.

There is a further contention that the verdict is excessive. This contention is based on the theory that the plaintiff suffered no physical or bodily injuries, that the injuries complained of are purely mental, are the result of the shock from the collision, and that damages for mental distress alone are not recoverable unless accompanied by physical injuries, citing *Shelton v. Bornt*, 77 Kan. 1, 93 Pac. 341. That general rule is not applicable to this case. There is testimony that when plaintiff was struck by the train he was stunned and at that time stated that he did not know how badly he was hurt; that afterwards he had pains in the back of his head and that these headaches were very painful and rendered him unfit for business; that he was unable to sleep at night, and further, that for a while his side was strained and pained him for about a week or ten days, and then that sensation passed. There was testimony that previous to the accident he was robust and strong, but that since the collision he has had nervous spells which for the time affect his memory and render him unfit for business. These conditions persisted up to the time of the trial. In view of the testimony it cannot be said that no physical injury resulted from the collision. There may be physical injury where there are no broken bones, lacerations or mutilation of the flesh or surface wounds of any kind. The symptoms described by the witnesses show that internal injuries physical in their nature, resulting from the collision, afford a ground of action. (*Townsend v. Seefeld*, 102 Kan. 302, 169 Pac. 1157; *Clemm v. Atchison, T. & S. F. Rly. Co.*, 126 Kan. 181, 268 Pac. 103, and cases there cited.)

It follows that the judgment must be affirmed. It is so ordered.