Grafton,
Feb. 2, 1937.

### JOHN R. ALLISON

*v.*

### BOSTON & MAINE RAILROAD.

### C. E. JARVIS, *Adm'r v.* SAME.

*George W. Pike* and *Robert G. Wakefield* (*Mr. Pike* orally), for the plaintiffs.

*Jewett & Jewett, Robert V. Johnson* and *Cheney, Nighswander & Lord* (*Mr. Theo S. Jewett* orally), for the defendant.

Woodbury, J. The plaintiff Allison testified that although it was somewhat foggy on the morning of the accident he could see two or three hundred feet; that neither he nor the decedent was familiar with the road from Plymouth to Woodsville; that he was not aware of the existence of Spaulding's Crossing until an instant before the impact when he saw a "black flash" which was the boiler of the locomotive; and that he heard no locomotive whistle or bell just prior to the collision. The foregoing testimony, and the plaintiff introduced no other, as to the events leading up to the accident, is insufficient to warrant a finding that either the bell or whistle of the locomotive was not sounded or that it was being operated at excessive speed.

Allison himself did not attempt to fix the speed of the train as fast or otherwise, but it is now argued that since the locomotive appeared to him as a "black flash" it must have been traveling at excessive speed. This argument does not require acceptance because it appears that this plaintiff caught sight of the locomotive out of the corner of his eye only a fraction of a second before the impact. It may have appeared as a "black flash" because the witness did not see it sooner as well as because of its excessive speed. To permit the jury to infer excessive speed from such evidence would be to permit them to base their verdict upon guess or conjecture.

The evidence that this witness heard no bell or whistle comes to nothing because it appears that he was not listening for such signals. His failure to hear is referable as much to his inattention as to the claim that no whistle or bell was sounded, and it, therefore, amounts to no more than a *scintilla*. As such it provides no sufficient basis for a verdict. *Collette* v. *Railroad*, 83 N. H. 210, 216, and cases cited.

The plaintiffs' argument to the effect that the *scintilla* rule invoked in the above cases does not apply to the case at bar because here there is no positive evidence that the signals were actually given, also comes to nothing. The burden of proof on this issue rests upon the plaintiffs and they have adduced no legally sufficient evidence to support it.

The ground of alleged negligence upon which the plaintiffs principally rely, however, is that the crossing was not sufficiently protected with warning signs, their position being that the defendant should have provided at that point a flagman or automatic bell and light signal.

"Reasonable need for special crossing-protection" is ordinarily a question of fact for the jury (*Cyr* v. *Railroad, ante,* 278 and cases cited) but: "This ground of negligence cannot sustain the verdict unless evidence of the causal effect of the careless act or omission to produce the injurious result is shown. If the evidence is conceded to be sufficient to find lack of care in such respect, yet unless the evidence also tends to show the force of the carelessness in producing the injury, the claim must fail (*McGill* v. *Company,* 70 N. H. 125, 129; *Bennett* v. *Company,* 76 N. H. 180), and a finding that an ordinary cross-arm warning sign or some more prominent signs than there were would have been seen and heeded with action averting the collision must be a reasonable inference from the evidence." *Collette* v. *Railroad, supra,* 213.

In the case at bar, as in the case last cited, the driver of the automobile drove upon the crossing in complete ignorance of its proximity and without having seen the obvious features of the surrounding landscape. The crossing was protected by the statutory warning sign set three hundred feet away and also by a cross-arm sign at the crossing itself. He saw neither, and the evidence does not support his contention that these signs were placed where they could not readily be seen and were weather-beaten to such an extent as to be obscure. Neither did he see the defendant's tracks as they crossed the highway. His failure to note these features of the landscape, cannot be referred to the fog because in spite of it he could see at

least two hundred feet. The only inference possible from the evidence is that he was negligently inattentive to his surroundings as he approached the crossing.

This is not a case in which the plaintiff was aware of the crossing but not of the approaching train. He was aware of neither, and, there being no evidence that the crossing was a blind one, the slightest care and attention on his part to the obvious features of his surroundings would certainly have disclosed the presence of both. He was unaware of both moving and stationary features of the scenery and it is speculative to say that additional moving or stationary warning signs would have aroused his dormant attention. It follows that there is no evidence of causal negligence on the part of the defendant and that the negligence of the driver of the automobile was the sole proximate cause of the accident. The defendant's motions for nonsuits were properly granted.

*Judgments for the defendant.*

MARBLE and PAGE, JJ., were absent: the others concurred.