FRANK et al. v. McCARTHY et al.

Nos. 7076, 7077.   Decided January 9, 1948.   (188 P. 2d 737.)

See 52 C. J., Railroads, sec. 1900. Contributory negligence of one who attempts to cross railroad tracks just after a train, or part of a train, has passed over the crossing, see note, 56 A. L. R. 543. See also, 44 Am. Jur. 809.

*Farnsworth & Van Cott, Grant H. Bagley,* and *Dennis McCarthy,* all of Salt Lake City, for appellants.

*Jesse K. Smith, Sr.,* of Salt Lake City, and *Dallas H. Young,* of Provo, for respondents.

McDONOUGH, Chief Justice.

Hyrum Frank, as truck driver, and his father and employer, George Frank, each brought suit for damages sustained in consequence of a railroad crossing collision in Provo, Utah. On stipulation of the parties, the cases were consolidated for trial, since the same evidence was applicable to both cases. Each plaintiff recovered a verdict; the defendants appeal.

There is sufficient evidence to show negligence on the part of defendant Trustees, which was a proximate cause of the injuries of which plaintiffs complain. The principle questions raised by the assignments of error all relate to whether the evidence produced by plaintiffs themselves show that they were guilty of contributory negligence, so as to preclude them as a matter of law from recovering judgment against defendants. If they were guilty of such negligence, then the trial court erred in refusing to grant each of the motions for a directed verdict against the plaintiff in each case.

Plaintiff George Frank was the owner of a truck loaded with five tons of pig iron, moving toward the Backman Foundry a short distance beyond the crossing in question. Plaintiff Hyrum Frank was the employee of George Frank, and was driving the truck for George Frank at the time the collision occurred. The two were in the cab of the truck at the time of the accident. In these circumstances, since Hyrum Frank was the employee of his father, and engaged in the duties of his employment at the time of the accident, any contributory negligence on the part of Hyrum in the operation of his father's truck would be imputed to his father George Frank, the other plaintiff.

The defendant company, which at the time of the collision was operated by the defendant Trustees, has at the site of such collision, double tracks extending in a northwesterly and southeasterly direction, with a curve of about one degree toward the north. These tracks intersect 5th South street in Provo. Plaintiff Hyrum Frank was driving the loaded truck west on 5th South street on May 8, 1946, approaching these double tracks. He testified that he was about a half block from the crossing when he observed a freight train moving in a northwesterly direction on the tracks closest to him. He stopped the truck about 15 feet east of the track for northwesterly traffic, and as he did so the motor stopped. He said he could not see anything approach from the northwest on the tracks for southeast bound traffic, for the reason that this freight train which was

traveling from 10 to 15 miles per hour was obstructing his view. Except for this freight train, he could have had an unobstructed view up the tracks in a northwesterly direction for about a half mile.

When the caboose of this freight train passed 5th South street, Hyrum Frank started the motor, and as he did so he looked toward his right to see if there was any train approaching on the farther track, but he could see only about 75 feet toward the northwest because his view was temporarily obstructed by the northwesterly bound freight train on the inside of the curve. He heard no whistle nor any other signal of any approaching train until the locomotive reached the cattle guards which are located about 220 feet to the northwest from the point at which the truck stopped. He put the car in first gear and started over the first tracks and shifted into second, and he again looked to his right up the track, and saw a passenger train then at the cattle guards going about 55 miles per hour. This train sounded three short blasts at the cattle guard, but it continued at the same rate of speed. He stopped the truck about 1 foot east of the tracks on which this passenger troop train was traveling, and he tried to back up, but the overhang of the locomotive being in excess of 1 foot from the rail, the engine struck the truck and dragged it about 50 feet to the southeast along said tracks.

The father, George Frank, gave substantially the same version of the collision. He testified that the freight train was going only about 5 to 10 miles per hour, and that the caboose had just reached the cattle guards to the right when he saw the approaching passenger train going at 50 miles per hour. He also stated that there was a short blast of the whistle just as the train reached the cattle guards, and that his boy stopped just east of the northerly rail of the second set of tracks; that he told his boy to back up, but before the boy could do so, the locomotive struck the front part of the truck. He too testified that because of the curve of the tracks it was impossible to see very far up the second set of tracks after the caboose of the freight train passed;

but he made the comment that they could not "wait all day" to get across.

Respondents rely on the case of *Pippy* v. *Oregon Short Line R. Co.*, 79 Utah 439, 11 P. 2d 305, in support of their contention that whether plaintiffs were guilty of contributory negligence in this case is a question of fact to be resolved by the jury from the evidence of what they did in view of the surrounding circumstances. However, if reasonable minds would not be warranted in reaching any conclusion other than that plaintiffs were guilty of contributory negligence in the light of plaintiffs' own testimony or other undisputed facts, there is no jury question but a question of law for the court.

Counsel for respondents apparently overlooked the factors which distinguish the *Pippy* case from the instant cases, and which require a finding in these cases that plaintiffs were guilty of contributory negligence as a matter of law. In the *Pippy* case there were a number of tracks. The view of plaintiff was obstructed in part by cars stationed on some tracks, which cars were disconnected from any moving train; and which would doubtless remain in such stationary position for some time so as to obstruct the view of a motorist indefinitely; whereas in these cases, the freight train which created the alleged blind curve which obstructed plaintiffs' view of the approaching passenger train, was moving farther away from plaintiffs and it was only a matter of seconds until such obstruction would have been removed. In the *Pippy* case there was a flasher signal which was not functioning, and the operator of the vehicle was led to believe that it was safe to go upon the tracks, whereas in this case there was nothing to mislead the plaintiff or to induce them to believe that it was safe to go upon the tracks on which the passenger train was approaching. In these cases there was no blind curve existing by reason of immovable objects or railroad cars on a siding which would indefinitely obstruct the view of the approaching motorist. Consequently there is no force to the remark of Plaintiff George Frank that they could not be expected to

"wait all day," when it was only necessary to hesitate a few seconds to obtain a clear view of the approaching train.

Plaintiffs were not entitled to have their cases submitted to the jury unless it could be said that plaintiffs might have been acting as reasonable and prudent men, in proceeding toward the farther tracks before the freight train had passed far enough to give them a clear view of the tracks used for southeast bound traffic. Plaintiffs admitted on cross-examination that they knew other trains proceeded toward the southeast at frequent intervals. There was nothing in the nature of safety signals which indicated that it was safe to cross. When they crossed the first set of tracks which were less than 16 feet from the tracks on which the passenger train was approaching around a curve obscured from their line of vision momentarily by the passing freight train, they knew they could see not more than 220 feet up the tracks. They knew they were going blindly into a zone of known danger, and that by reason of the movement of the freight train the obstruction to their view of the other tracks would continue for only a few seconds at the most. Due care required that they wait until their view to the northwest was unobstructed, to assure their own safety.

There are many cases which hold that a traveler who stops for a train to pass at a crossing where there are two sets of tracks, must be mindful of the fact that another train may be approaching on the other tracks from the opposite direction, entirely concealed from his view; and that due care requires that the traveler refrain from crossing until the train obstructing his view has passed far enough to give him a sufficient view of the other tracks to be able to look effectively for approaching trains. This rule is aptly expressed in *Pennsylvania R. Co.* v. *Rusnik,* 117 Ohio St. 530, 159 N. E. 826, 828, 56 A. L. R. 538:

"When a passing train is upon the track nearest to the traveler, and one or more parallel tracks are beyond this track, the traveler on the highway must give heed to the fact that a fast moving train may be approaching the crossing in the opposite direction from that in

which the train on the first track is moving, which may be entirely concealed from the view of the traveler by the moving train then occupying the crossing; and it is not the exercise of ordinary care for his own safety on the part of the traveler to wait only until the passing train shall have cleared the crossing and then to go forward without waiting to ascertain whether another train is approaching the crossing on a track beyond that of the passing train. Time must be given to permit the passing train to get so far beyond the crossing that the traveler, while halted in a place of safety, may be afforded a clear view of the track or tracks in both directions, and he may thereby know whether a moving train is in close proximity to the crossing thereby endangering any attempt he may make to cross the tracks in front of such approaching train. The omission of such caution on the part of the traveler will constitute contributory negligence on his part sufficient to bar any recovery for damages against the railway company for injuries which he may sustain in a collision with a train, due to his omission to exercise the caution stated; and this is true, notwithstanding the fact that the employees of the railway company have neglected to give the signals of the train's approach to the crossing, required by law to be given."

See also *Rau* v. *Northern Pac. Ry. Co.*, 87 Mont. 521, 289 P. 580; *George* v. *Northern Pac. Ry. Co.*, 59 Mont. 162, 196 P. 869; *Stryker* v. *Pennsylvania R. Co.*, 104 N. J. L. 299, 140 A. 451; *Swanson* v. *Central R. Co.*, 63 N. J. L. 605, 44 A. 852; and *McCartney* v. *Pennsylvania R. Co.*, 307 Pa. 226, 161 A. 63.

In the instant cases respondents emphasize the excessive rate of speed of the passenger train and also the fact that the obstruction to the view was created by the railroad company itself. They contend therefore that the rule reiterated in *Nabrotzky* v. *Salt Lake & Utah R. Co.*, 103 Utah 274, 135 P. 2d 115, could have no application. Since the obstruction to their view was caused by a moving train and of momentary duration, this argument is disposed of by the Michigan Supreme Court in *Lamb* v. *Pere Marquette Ry. Co.*, 221 Mich. 273, 191 N. W. 227, 229:

"For plaintiff it is contended that this cause is within an exceptional class recognized by this court, where, owing to proof of unusual stationary obstructions to a view along the track and confusing or misleading conditions of some kind at a dangerous crossing created by

defendant, it has been held that whether, under the exculpating circumstances shown, claimed observations and other precautions taken before attempting to cross were such as reasonably careful and prudent men would and should take when in like situations, was for the jury. * * *

"It may be first noted that in this case there was but a temporary passing obstruction which cut off plaintiff's clear view along the track to the west from the stopping point he selected. He was a traveler upon a public highway about to pass over a railroad crossing. As such it was his duty, when a transient or temporary obstruction to his view intervened, to wait in a place of safety until it was so far removed that he could ascertain with reasonable certainty that it was safe for him to proceed over the crossing. * * *"

A temporary moving obstruction to the view of a motorist about to cross two sets of railroad tracks, does not excuse him from the due care requirement to look and listen; and if he must wait to look and listen ▪ effectively, he fails to exercise due care and is negligent if he proceeds onto the tracks or into a zone of known danger before he is able to get a clear view.

In the attempt to avoid the defense of contributory negligence, respondents stress the evidence which indicates that the passenger troop train was going about 55 miles per hour, or advancing toward plaintiffs at the rate of about 80 feet per second, thus emphasizing the un- ▪ lawfulness of the speed of the train in approaching the crossing. Counsel say that plaintiffs could not reasonably anticipate that the train would be going at such an excessive rate of speed, and that they could not be expected to wait until there was a clear view of the tracks for a considerable distance. However, such contention must be examined in the light of the fact situation as described by plaintiffs. When the truck started to cross the nearest tracks, the driver's view of the second set of tracks was limited to about 75 feet.

The testimony of plaintiffs is indefinite as to when either of them next looked northwesterly, and as to how far they could see up the tracks for southeast bound trains. The

driver's testimony indicates that he again looked just about as the front end of his truck crossed over the first set of tracks. He testified that at that point the northwesterly bound freight train still obstructed his view of the second set of tracks because of the curvature of the tracks. At such point according to his testimony, he could not see beyond the cattle guards—less than 225 feet up the tracks. It is doubtful that the slight curvature of the tracks at such point would cause the northwest bound freight to limit his vision to the extent indicated. However, assuming such to be the fact, he proceeded the short intervening distance toward the second set of tracks, despite his knowledge of the obstruction to his vision. In so doing he was negligent. It is doubtful if the driver could have negotiated the second set of tracks if the troop train was at the cattle guards and going at a legal rate of speed. Certainly, if the driver had observed the train at the cattle guards, proceeding at a legal rate of speed, he would not have been in the exercise of due care in attempting to drive in front of it in the less than five seconds of time which would transpire before such train would reach the crossing. On the other hand, if it were assumed that after crossing the first set of tracks, the driver's view of the second set of tracks was unobstructed for a distance of 400 feet, had he looked he would have seen the oncoming train though traveling at the rate of speed estimated by plaintiffs. If in fact he failed to look after crossing the first set of tracks, he was in such respect negligent.

There here was no jury question since the testimony of plaintiffs themselves showed that they were negligent in a manner which contributed to their own injuries, which bars them from recovery. The district court erred in failing to grant the several motions for directed verdicts. The judgment of the district court is therefore reversed in each case, and the causes are remanded with directions to enter judgments in these cases against the plaintiffs and in favor of all of the defendants, "no cause of action." Costs to appellants.

PRATT, WADE, WOLFE, and LATIMER, JJ., concur.