## HOLMGREN v. UNION PAC. R. CO.

No. 7086.   Decided October 13, 1948.   (198 P. 2d 459.)

See 52 C. J., Railroads, sec. 1906; 5 Am. Jur. 675. Emergency rule as applied to automobile or motorcycle drivers, note, 111 A. L. R. 1019.

*Rawlings, Wallace & Black,* of Salt Lake City, and *Glenn W. Adams,* of Ogden, for appellant.

*H. B. Thompson, Bryan P. Leverich, A. U. Miner* and *M. J. Bronson,* all of Salt Lake City, for respondent.

WOLFE, Justice.

Appeal by the plaintiff from a judgment of nonsuit in an action by plaintiff against defendant for the wrongful death of plaintiff's decedent, Leroy P. Holmgren.

Holmgren was killed on the afternoon of June 5, 1947, when one of the defendant's trains collided with a truck

driven by the decedent. The fatal accident occurred at the intersection of a public road with one of defendant's tracks at a point just south of the Weber-Box Elder County line. The locale of the accident is more particularly described as follows:

At the site of the accident three railroad tracks run in a generally northerly and southerly direction and parallel to each other. The westernmost of the three tracks, upon which the collision occurred, is referred to as the Oregon Short Line main-line track; the center track is the O. S. L. passing track; and the easterly track is the Utah-Idaho Central track. Utah highway No. 91 also runs generally northerly and southerly and roughly parallel to the above described tracks. An oil mulch public road, hereinafter referred to as the oil road, leads from highway 91 in a generally northwesterly direction across the railroad tracks and beyond.

At the point where the oil road joins highway 91, highway 91 is about 4½ feet higher than the O. S. L. main-line track, and at a point 100 feet north it is 5.1 feet higher. The U. I. C. track is at an elevation of about 23 inches higher than the O. S. L. tracks, both of which are at about the same level.

There is a flasher light signal about 32 feet east of the U. I. C. tracks.

The distance between the east rail of the O. S. L. passing track and west rail of the U. I. C. track is about 90 feet, as measured along the course of the oil road, and the distance between the west rail of the O. S. L. passing track and the east rail of the mainline track is about 14 feet as measured along the course of the oil road. It must be remembered that the oil road did not intersect the tracks at right angles, but at a wide obtuse angle of about 140°. Hence, the road distance between tracks is somewhat greater than would be the distance measured along a perpendicular to the tracks.

From the point where the oil road intersects the O. S. L. main-line track, that track runs in a straight line northerly for a distance of about 4000 feet, and at the time of the accident there were no obstructions to the view for that distance. There is a line of telegraph poles between and parallel to the O. S. L. passing track and the U. I. C. track. Just west of the U. I. C. track there are three large mason-work circular walls surrounding natural hot springs, and hereinafter referred to as steampots.

The accompanying diagram, though not drawn to scale, indicates with a fair degree of accuracy the relative positions of the various landmarks involved in this case.

At the time of the accident it was not raining, although it had been raining earlier in the day. The sky was overcast, the air was cool, and the roads were wet. Steam was rising from the steampots, but there is no evidence that it was of sufficient quantity or density to substantially impair visibility.

The evidence is undisputed that the oil road was in very bad condition, that it was full of ruts and chuckholes, and that it was particularly bad at the U. I. C. crossing where it was worn down nearly to the ties, thus leaving the rails projecting several inches above the surface of the road.

Immediately prior to the accident one of defendant's trains was proceeding in a southerly direction along the

O. S. L. main-line track. Its speed was not established with any degree of certainty by the evidence, but it was in the neighborhood of 40 m. p. h. The fireman on the train observed decedent driving in a southerly direction along highway 91. Somewhat ahead of and proceeding in the same direction as decedent were two army ambulances. The ambulances turned right, onto the oil road, and proceeded toward the railroad crossing. Holmgren followed the same route. Although there is some slight evidence to the contrary, what appears to be the great preponderance of the evidence establishes that Holmgren caught up to the two ambulances at about the time they turned from highway 91 onto the oil road, and that he followed closely behind the second ambulance as they proceeded toward the tracks. This is the view of the facts adopted by plaintiff to support her theory, as will be more fully pointed out hereafter.

Holmgren followed the two ambulances across the U. I. C. track and the O. S. L. passing track and was attempting to cross the main-line track right behind them when he was struck and killed by the oncoming train.

There is no serious question that there was evidence of negligence on the part of defendant, and therefore the evidence on that question is not detailed, and is stated in this opinion only as it appears incidentally to the discussion of the questions here considered. Two principal questions are presented for our consideration. We shall treat first the question of whether the evidence establishes, as a matter of law, that decedent was guilty of contributory negligence.

It should be noted here that there was evidence that the blinker light signal to the east of the U. I. C. tracks was not operating at the time of the accident, and hence there was no warning by mechanical signal device of the approaching train.

The undisputed evidence was that the ambulances were travelling at a rate of speed no greater than 5 to 7 m. p. h. after they turned off highway 91 and onto the oil road.

The evidence is equally clear that when Holmgren came to the U. I. C. track he slowed down to a speed no greater than 10 to 12 m. p. h.

The evidence further establishes that Holmgren had traversed the oil road and this crossing on many occasions prior to the fatal accident, and that he was thoroughly familiar with it.

Defendant insists, and the trial court held, that under the evidence all reasonable minds must agree that deceased either failed to look, or if he looked failed to heed what he saw or should have seen, and hence was guilty of contributory negligence as a matter of law. Plaintiff, on the other hand, contends that visibility along the railroad tracks was greatly obstructed by the telegraph poles, steampots, and other landmarks, and that visibility was further impaired by the steam arising from the steampots. Plaintiff thus seeks to come within the rule of *Pippy* v. *Oregon Short Line R. Co.*, 79 Utah 439, 11 P. 2d 305, 314, wherein it was held that

"where an automatic or other signaling device is maintained by a railway company at a public crossing to give warning of the approach of engines and trains, one approaching and attempting to pass over the crossing in a vehicle has the right to rely, *not solely or entirely, but to some extent,* on the signaling device, and that its failure to operate in a given case may ordinarily be regarded as an implied invitation to pass, and *unless the traveler before he entered upon the crossing and attempted to pass over it failed to look and listen when to do so would have discovered the approaching train in time to have avoided the collision,* or in vew of the surroundings it was conclusively shown he had not otherwise used due and ordinary care, the case should be submitted to the jury." (Italics added.)

The *Pippy* case was distinguished in the recent case of *Drummond* v. *Union Pac. R. Co.*, 111 Utah 289, 177 P. 2d 903, 908. Mr. Justice Latimer, speaking for a unanimous court, there said:

"The failure of the signal bell was an invitation to her [plaintiff] *to proceed with due care,* but was not an invitation to proceed with-

out regard to other dangerous conditions then existing that could
have been ascertained by the use of ordinary care."

Although there is some conflict in the evidence, it appears
that a motorist proceeding along the oil road from highway
91 toward the tracks would have a fairly good view of the
tracks to the north for most of the road distance to the
tracks, although his view would be partially ob-
structed intermittently as he passed by the steam-
pots, telegraph poles, and other visual obstructions.
And it is undisputed that after decedent reached a point
some 30 to 35 feet east of the main-line tracks, he would
have had a clear and unobstructed view to the north for
about 4000 feet. The evidence fails to support plaintiff's
contention that the weather was so murky and the steam so
dense as to substantially reduce visibility.

Although decedent was entitled to rely to some extent
upon the warning signal established by defendant railroad,
he was not thereby relieved of his duty to exercise
reasonable care for his own safety. The failure of the
blinker signal to warn Holmgren of the approaching
train was not an invitation for him to proceed blindly across
the tracks, heedless of his own safety.

As heretofore noted, Holmgren was thoroughly familiar
with this crossing, having traversed it many times. If, as
contended by plaintiff, the steampots and other obstructions
to vision so substantially limited Holmgren's view
of the tracks as to leave it uncertain in his mind
whether or not any trains were approaching, then he
should have proceeded slowly and with caution to that point
where he could get an unobstructed view of the tracks, and
he should then and there have observed for approaching
trains before attempting to cross the tracks. The con-
clusion is irresistable that Holmgren either failed to look,
or having looked, failed to heed what he saw or should have
seen He must, therefore, be held to have been guilty of
contributory negligence as a matter of law.

The second contention urged upon us by plaintiff is that even though decedent were guilty of contributory negligence as a matter of law, the case should have been submitted to the jury on the theory of last clear chance. Before attempting to apply the rules of last clear chance to the facts of this case, a few preliminary observations may be of value.

This court has more than once cited with approval the rule of last clear chance stated in the American Law Institute Restatement of Torts, Sec. 480, which reads as follows:

"A plaintiff who by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) knew of the plaintiff's situation;

"(b) *realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm*, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff." (Italics added.)

In amplification of this rule, and particularly subparagraph (b) thereof, we have said that

"to hold the defendant liable it must plainly appear to the jury that defendant knew or reasonably should have known of plaintiff's * * * inattention and after such realization or after he reasonably, had he been conducting himself with the vigilance required of him, should have known it, 'is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff.' In the clear chance doctrine the plaintiff's negligence has become in a sense fixed and realizable and on to this state of things defendant approaches on to the negligent plaintiff with and in control of the danger." *Graham* v. *Johnson*, 109 Utah 346, 166 P. 2d 230, 235, 236.

It may be further observed that the doctrine of last clear chance is generally held not applicable to railroad crossing collision cases. See *Basham* v. *Southern Pacific Co.*, 176

Cal. 320, 168 P. 359; *Johnson* v. *Sacramento Northern Ry.*, 54 Cal. App. 2d 528, 129 P. 2d 503; and *Hutchinson* v. *Thompson,* Mo. App., 167 S. W 2d 96.

In *Johnson* v. *Sacramento Northern Ry.*, supra, the court discussed at considerable length the application of the last clear chance doctrine to railroad crossing collisions, and cited and discussed many of the cases treating that question. Said the court [54 Cal. App. 2d 528, 129 P. 2d 505]:

"It is only in exceptional circumstances that the doctrine may be applied to cases involving collisions between two moving vehicles or at least in cases where the injured party is driving a rapidly moving vehicle for in such cases the act creating the peril ordinarily occurs practically simultaneously with the happening of the accident and the party sought to be charged cannot be said to have had a *last clear* chance to avoid the accident after the discovery of the injured party's peril. That the injured part may not ordinarily invoke such doctrine in cases involving collisions between moving vehicles and trains at railroad crossings is established by numerous decisions in this jurisdiction. (Citations omitted)."

And further:

"It is also significant to note that the 'situation of danger' or 'position of danger,' referred to in the authorities dealing with the last clear chance doctrine, is reached only when a plaintiff, moving toward the path of an oncoming train or vehicle, has reached a position 'from which he cannot escape by the exercise of ordinary care.' In other words, *it is not enough, under the last clear chance doctrine, that plaintiff is merely approaching a position of danger, for until he has reached a position of danger, he has the same opportunity to avoid the accident by the exercise of ordinary care, as has the defendant.* In such cases the ordinary rules of negligence and contributory negligence apply, rather than the exceptional doctrine of last clear chance. It is only in cases in which, after plaintiff reaches a position of danger, defendant has a last clear chance to avoid the accident by the exercise of ordinary care, and plaintiff has no similar chance, that the doctrine is applicable." (Italics added.)

And also:

"It must be remembered that the last clear chance doctrine involves just what its name implies. As this court said in *Poncino* v. *Reid-Murdock & Co.*, 136 Cal. App. 223, at page 227, 28 P. 2d 932, at page

934, 'In other words, it is not enough to relieve a plaintiff of his own negligence that the defendant may have had a chance to avoid the accident, but defendant must have had the *last chance* and also had a *clear chance* to do so by the exercise of *ordinary care.* That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a clear chance implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party.' "

In *Hutchison* v. *Thompson* Mo. App., 167 S. W. 2d 96, 103, the court said:

"However, the duty to slacken speed or sound a warning does not arise under the humanitarian doctrine until the traveler is in a position of imminent peril as above defined. When he approaches a railroad track in a motor car at such speed that the car may be stopped before entering the tracks or reaching a position of imminent peril, trainmen seeing such approach would have a right to assume that the car would stop in a place of safety, provided there was no appearance in the acts or conduct of the driver or the movements of the **car, or other circumstances, to** indicate that the driver was oblivious and did not intend to stop. This rule is clearly, succinctly, and well stated in a recent opinion by the Springfield Court of Appeals in the case of *Thomasson* v. *Henwood*, 235 Mo. App. 1211, 146 S. W. 2d 88, 93, wherein it is said: 'An engineer is not required to slacken the speed of his train or sound a warning whistle merely because he sees an automobile approaching the track. *So long as the automobile is traveling at a speed at which it can be stopped before going upon the track, and there is nothing in the conduct of the driver to indicate that he is unaware of the approaching train, no duty rests upon the engineer to act either in reducing the speed of his train or sounding a warning whistle.'* " (Italics added.)

The rules stated in the above quoted authorities are followed in this jurisdiction. In the recent case of *Van Wagoner* v. *Union Pac. R. Co.*, 112 Utah 189, ■■ 186 P. 2d 293, 302, we said, speaking through Mr. Justice Latimer:

"The engineer or other members of the train crew could assume the deceased would stop until he was so close to the track that a reasonable person would know otherwise. Undoubtedly when deceased

cleared the one tree some 20 feet from the crossing, it would be apparent that he did not intend to stop. Disregarding the testimony of two members of the crew that when they did see the truck clear this tree they gave the emergency signal, appellants' evidence only permits one or two seconds for the train crew to have taken the necessary steps to have prevented the accident. This is not giving the defendant the last clear chance. *The opportunity to avoid the accident must not be a possibility; it must be a clear opportunity.* Not even by speculation could the jury reach a verdict on the theory that the train crew had time to appreciate that deceased was negligent and that by reasonable means they could have avoided the ensuing collision. *When as in this jurisdiction, a train has the preferred right of way, its operator is entitled to assume the driver of a car will yield to this preferment, and if the doctrine of last clear chance is to be invoked, it must clearly appear that time permitted the train crew to appreciate deceased's predicament, and to give warnings sufficiently early enough for the deceased to extricate himself, or the time element was sufficient to permit the crew to bring the train to a stop.* No such showing was made here." (Italics added.)

The validity of the above stated rules is not here questioned. However, plaintiff contends that the jury could reasonably find that defendant's train crew realized or had reason to realize that the decedent was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and thereafter were negligent in failing to utilize with reasonable care and competence their then existing ability to avoid injuring decedent. Plaintiff's position is based upon a somewhat novel theory which plaintiff has denominated "concourse of vehicles." For purposes of this discussion, it will be referred to as the concourse theory.

Plaintiff argues that the Holmgren truck caught up to the army ambulances which were preceding it along the highway at about the time that it (the Holmgren truck) turned off highway 91 and on to the oil road, and thereafter, up to the time of the accident, decedent followed closely behind the second ambulance. It is thus contended that the three vehicles proceeding toward the tracks formed a caravan. The gist of the argument is that defendant's train

crew, having observed the Holmgren truck following closely behind the army amublances should have been put on notice that decedent was intent upon following the ambulances and therefore probably unaware of the approaching train.

There might be real merit to the concourse theory in the case of a funeral cortege, a military convoy, a circus parade, or other similar procession, where all vehicles were obviously related to one another, and all a part of a same clearly defined column. In such a case, a jury might be permitted to find that it should have been apparent to the train crew that the driver of each vehicle would be intent upon following the vehicle immediately preceding him, and upon maintaining his proper place in the formation, and therefore oblivious to the imminent peril. But that is not the situation here. The two vehicles which preceded deceased across the tracks were army ambulances, marked with a red cross, and assumedly painted olive-drab in color. Deceased's truck was red, clearly not an army vehicle. It had no relationship to the other vehicles other than that they were all temporarily following the same route. Had deceased's truck approached the intersection alone, there would have been nothing to indicate to the train crew deceased's obliviousness to his imminent peril. The fact that two vehicles approached the tracks just ahead of Holmgren would not arouse in the train crew any thought that the three vehicles were related, as in fact they were not. The concourse theory is not tenable in this case.

There is no evidence in the record from which a jury could reasonably find that defendant's servants knew or should have known that deceased was probably oblivious of his imminent peril, prior to the time that he accelerated his vehicle as he crossed the O. S. L. passing tracks. At that time it was too late to avert the collision, or at best, the ability of defendant to do so was highly conjectural. Certainly it cannot be said that defendant had a "last clear chance" to do so.

Plaintiff has also assigned as error certain rulings on the admissibility of evidence. We have examined these assignments and find them to be without merit. No useful purpose could be served by discussing those assignments.

The judgment is affirmed. Costs to respondents.

McDONOUGH, C. J., and LATIMER, J., concur

PRATT, Justice (concurring in the result).

Our differences of opinion center about the application of the evidence to the principle of the last clear chance. The pleadings allege in substance that the train crew saw or should have seen the ambulances and the Ford truck crossing the tracks in time to discover their peril, but failed to exercise care in trying to avoid the accident. These allegations are general and would include any evidence indicative of the fact as appellant contends the case to be, that the deceased was apparently unknowingly driving into a condition of peril. Counsel for appellant has, however, interpreted the evidence as indicating what he calls a concourse theory. This theory apparently is this: The actions of these vehicles were such as to indicate to the observer that the attention of the driver of each was so centered upon maintaining his relative position as to the other two that he was not aware that he was driving into a position of peril. We all seem to agree that this is not a justifiable conclusion at which to arrive.

Witnesses frequently make certain statements of fact conclusions founded upon what they saw at the time. If they relate the facts upon which the conclusions are founded it may be those facts do not support the conclusions. For instance, the fireman in this case, a witness for the plaintiff, places the point at which deceased gave obvious evidence of his intention to cross in front of the train as his speeding up to go over the passing tracks. But, the fireman, in detailing the picture of these vehicles as he saw and watched

them travel the highway and road in question so places them by estimates, or otherwise, as to throw considerable doubt in a reasonable mind as to whether or not there was any justification for his conclusion as to when deceased's inattention first appeared. That being so, is there not a conflict of testimony that should go to the jury? It is hard to synchronize the testimony in this case as to the location of the vehicles at various times, with the witnesses' conclusions as to when it first became evident that deceased was not going to give way to the approaching train—or for that matter to arrive at an independent conclusion as to when that time was. At first I was inclined to believe, in view of that uncertainty, the matter should be submitted to the jury on the last clear chance doctrine. However, to submit that question to the jury assumes that there is evidence in the case indicative of an obvious inattention on the part of the deceased to his surroundings at a time prior to his speeding over the passing tracks—which latter time was too late to avoid the results. There is no question but what the evidence indicates negligence on his part, but is it such as to clearly indicate to an observer that he was unconscious of peril? From the fact that a person is shown to be contributorily negligent, it does not follow as a necessity, that it must have been obvious to others that his negligence evidenced that he was unaware of his surroundings. Absent facts other than the last minute speeding, evidencing an obvious inattention to surroundings, I am forced to conclude there is no question for the jury.

Appellant suggests that the fireman's testimony should not be considered as to specific details because it was elicited on cross-examination over objection of plaintiff's counsel. I am not in accord with this. If counsel calls a witness and asks him general questions as to distances and visibility of objects at the scene of the accident, opposing counsel may cross-examine by reference to specific objects even though they be parties participant.

WADE, Justice (dissenting).

I dissent.

I, however, agree that decedent was guilty of contributory negligence and that the facts do not support a recovery under the plaintiff's concourse of vehicles theory.

However, I reach the opposite conclusion on the theory that there was sufficient evidence to submit the case to the jury under the last clear chance doctrine on a theory which was contrary to that of the plaintiff, but which I claim is supported by the testimony of the fireman. A majority of the court disagree with my contention. It only involves a question of the effect to be given to and what could reasonably be found from the evidence. Since no question of law is involved but only a question of the construction to be placed on the evidence, and this problem will probably never recur in any future case and since it requires a construction of the evidence contrary to the theory of the plaintiff, and a majority of the court refuses, after a thorough discussion, to follow it, I see no useful purpose for stating my view at length, athough I fully adhere to them.