## SEYBOLD v. UNION PAC. R. CO.

No. 7641.  Decided December 20, 1951.  (239 P. 2d 174.)

See 52 C. J., Railroads, sec. 2024. Railroad crossings, duty to stop, look and listen before entering. 44 Am. Jur., Railroads, secs. 546 et seq.; 41 A. L. R. 405.

*Rawlings, Wallace, Black, Roberts & Black* and *Dwight L. King,* all of Salt Lake City, for appellant.

*Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray, D. A. Alsup,* all of Salt Lake City, for respondent.

CROCKETT, Justice.

An unattached caboose drifting toward a crossing crashed into a semitrailer truck plaintiff was driving, striking it just back of the cab. Plaintiff sued for damages for certain personal injuries suffered by him. The trial court allowed the case to go to the jury, but after verdict of $1500 was rendered for him, entered a judgment nothwithstanding the verdict in favor of defendant. Plaintiff appeals.

Defendant concedes that there was sufficient evidence from which the jury could find negligence on its part. Therefore, the sole question we are concerned with is: Was the trial court correct in ruling that the defendant was contributorily negligent as a matter of law? It is indisputable that defendant had the burden of so proving by a preponderance of the evidence. *Clark* v. *Union Pacific Railroad Co.*, 70 Utah 29, 257 P. 1050.

The collision occurred at what is called Rigby Crossing in Roberts, Idaho. The town is situated west of the arterial highway (U. S. 91) which runs north and south, forming the main street of the town, and is parallel to and west of the defendant's tracks. Highway 91 connects with Highway 48 which runs east across three sets of parallel tracks; 79 feet east of the Highway 91 is the team track; 43 feet further east is the passing track; and 17 feet further east is the main line track. There are train-activated flasher light signals on the right side 15 feet east and west of both approaches to the crossing.

The plaintiff was hauling a truckload of beef cattle southward on Highway 91 at about 7:00 o'clock in the evening of November 14, 1949. It was "quite dark." He turned left, or east, onto Highway 48 and toward the crossing. The evidence of the circumstances of the collision is in sharp conflict, but due to the ruling made against him the plaintiff is entitled to the most favorable view of it. There is no question but that the train-activated flasher signal was operating at the time. The plaintiff

testified that a train was standing on the Main Line Tracks, about 75 feet north of the crossing, with its engine lights shining southward across the crossing; that he knew that the train was activating the flasher signal; that he stopped his truck abreast of it, then proceeded across the Team Track and onto the Passing Track. His testimony as to looking up (northward) along the Passing Track was a bit sketchy. The only direct statement in the record concerning it was:

"Q. Did you look along the passing track to your left? A. It was quite dark there, and that locomotive headlight was flashing across the crossing. I looked, I couldn't see anything at that time."

It may or may not be significant that his answer was not direct. After having stopped abreast the flasher light, he started on across and did not thereafter stop or slow down, and, accordng to his own statement, although he knew that he could not see to the left because of the glare of the headlight, he continued onto the Passing Track. As he put it:

"I more or less kept my eye on the engine, and the road too, straight ahead, and saw nothing until the light from the engine seemed to black out,"

and he then "looked up and noticed the caboose" about 6 or 7 feet from him. His testimony was that he got "just a glance. I never had no more than a second" and his answer as to lights was, "Well, I never noticed any lights at all on the caboose," and "I never saw any people on the caboose." Thus he apparently only got a fleeting glimpse of the caboose at any time.

Upon the foregoing evidence, the plaintiff bases his claim that he made the observations which would be required of an ordinary, reasonable and prudent traveler exercising due care for his own safety on traversing this railroad crossing. Plaintiff does not gainsay ▪ his duty to look and listen for oncoming trains; nor

that he is charged with knowledge of what ordinary care in observing would show him; nor that his duty to observe for trains is even stronger where a train-activated signal is working, *Pippy* v. *Oregon Short Line R. Co.*, 79 Utah 439, 11 P. 2d 305; *Nabrotsky* v. *Salt Lake & Utah Ry. Co.*, 103 Utah 274, 135 P. 2d 115. And this is so although where the engine was standing near the crossing the plaintiff could, in the exercise of due care, assume that it was activating the signal, *Missouri Pacific R. Co.* v. *Shell*, 208 Ark. 70, 185 S. W. 2d 81; *Hough* v. *Atchison, T. & S. F. Ry. Co.*, 133 Kan. 757, 3 P. 2d 499.

His explanation of failing to see or heed the approaching caboose is two-fold. First, he contends that the caboose displayed no lights. Second, he contends that his vision was impaired by the engine headlight shining southward across the crossing, and that this coupled with the lack of lights on the caboose made it impossible for him to see it.

First, as to the question of lights on the caboose: Was there sufficient evidence for the jury to find it had no lights? We have no disagreement with the time-honored rule that if there is substantial evidence to support the conclusion of the trier of the fact it will not be disturbed on review. But that means more than a mere scintilla of evidence. See 9 Wigmore, 3d Ed., Sec. 2494, for a discussion of the test to be applied to the quantum of evidence necessary to support a finding by the trier of fact. In that section, at page 296, he says,

"There was an old phrase that a mere scintilla of evidence was sufficient; but this has been abandoned by most courts."

Citing a plethora of cases. After referring to a variety of methods of phrasing the rule and a great many authorities, he concludes the section with this:

"Perhaps the best statement of the test is: Are there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain."

We approve the rule thus stated by Mr. Wigmore. If there is any substantial competent evidence upon which a jury acting fairly and reasonably could make the finding, it should stand. But if the finding is so plainly unreasonable as to convince the court that no jury acting fairly and reasonably could make the finding, it cannot be said to be supported by substantial evidence. See also 20 Am. Jur. 1033.

How does the evidence as to the presence or absence of lights on the caboose square up in the light of the foregoing observations? The only evidence that it was unlighted was that of the plaintiff himself, as above related. Taking it in the light most favorable to him, ▪ he had an extremely limited and fleeting opportunity to make any observation upon which to base his statement that he did not notice any lights on the caboose. In *Allison* v. *Boston & M. R.*, 88 N. H. 420, 190 A. 127, plaintiff testified he did not hear any warning signal, nor did he see the defendant's train until the impact, when he saw a "black flash." The court held plaintiff's negative testimony was not sufficient to create a jury question because his testimony amounted to no more than a scintilla and provided no sufficient basis for a verdict. To the same effect is *Russell* v. *Watkins*, 49 Utah 598, 164 P. 867, 869, a case involving hearing rather than seeing, but the principle applied is the same. Therein this court stated:

"The weight of negative testimony of witnesses, as to the giving of signals, ordinarily is for the jury to determine; but, when physical conditions and the attending circumstances are such as to render it highly improbable that they could hear, we think the rule should be and is otherwise."

This principle of course applies to the other senses. It is not necessary that the witness be paying particular attention to the thing observed, but he must be so positioned that it is reasonable to suppose he would have observed had it occurred or the fact existed. This rule is laid down and the law concerning negative testimony is discussed

and cases collated by Mr. Chief Justice Wolfe in the recent case of *Hudson* v. *Union Pacific Railroad Co.,* 120 Utah 245, 1951, 233 P. 2d 357. See also 2 Wigmore, 3d Ed. Sec. 664.

As against the plaintiff's testimony, all of the members of the train crew testified that the caboose was lighted. Their evidence is that Enos Ray, the conductor, was out on the crossing flagging it with a lantern. Howard Kunze, the rear brakeman, testified that he was riding on the south end of the caboose with his lantern as it approached the crossing; that he saw the plaintiff's truck going southward on Highway 91 and make the turn eastward onto Highway 48; that he had his lantern and was waving it and began hollering to the plaintiff to warn him. It is appreciated that the members of the crew were interested witnesses, and we might cancel them off as such.

Far more important than those witnesses, however, and undoubtedly what influenced the trial court in his ruling, is the testimony of two disinterested witnesses who were at a vantage point where they could readily see and who said unequivocally that the caboose was lighted. Garry Dutson, who was working in a grocery store on the corner across Highway 91, saw that the caboose was lighted, and he also said,

"Well, it was dusk, but there was plenty of light, it isn't easy but you can always see it."

Joe Tirre, who was standing on the sidewalk on Highway 91 a little distance north of the crossing, also so testified and that he saw the brakeman's lantern swinging to and fro on the south end of the caboose and heard him shouting to warn the plaintiff prior to the crash; that he, Tirre, had no difficulty in seeing the caboose, stating,

"There was no cars on the first track,  *  *  *  and it was quite plain to see across there."

Considering the limited opportunity plaintiff had to observe, it can hardly be said in fairness that his evidence

was substantial. Contrasted with the testimony of other witnesses who had adequate opportunity for observation and especially that of the two disinterested witnesses who saw lights on the caboose from their vantage point, it seems to us that it would be unreasonable to make a finding that there were no lights on the caboose, and the plaintiff's evidence fails to meet the test as stated by Wigmore hereinabove quoted.

Moreover, it appears conclusively from the evidence that if the plaintiff had been exercising a reasonable lookout for his safety, he would have seen and avoided being struck by the caboose. This is unquestionably so if the caboose was lighted and in all likelihood it is so even if it had been without lights.

It is without dispute that the area was fairly well lighted. It was not yet completely dark that evening, the lights from the stores, an arc light just south of the crossing, and another about 300 feet north combined to make it so. No obstruction of any kind existed between the plaintiff and the caboose as they each approached the crossing at slow rates of speed: the caboose at three or four miles an hour and the plaintiff at six or seven miles an hour. It must at least be said that the standing train, its engine and the light thereon were plainly visible to the plaintiff, both as he proceeded southward on Highway 91 and as he made the turn onto Highway 48 toward the train and the crossing.

The plaintiff blames the engine headlights "flashing" across the crossing for his inability to see the caboose. He said the engine was about 75 feet, which is about two car lengths, north of the crossing. Its light would have projected southward in the shape of a cone, with its apex at the headlight and widening as it proceeded south. This cone is not susceptible of exact measurements and there is no evidence as to just how far west on the crossing it extended. However, under the adjudicated cases the plaintiff is confronted with a dilemma from which we see no escape. If he had looked to his left (northward) for approaching rail-

road traffic, the light could not have adversely affected his ability to see the caboose at any time before he entered the light cone. Actually, so long as plaintiff was west of the light cone, just as soon as the caboose came far enough south to be affected by the engine light at all, it would have been between the plaintiff and the light cone and would have thus been silhouetted against the light and therefore much easier for him to see than if the lights had not been there at all.

If after having seen the engine light, which he did, he failed to look northward before he entered the light cone, the area wherein the light would blind him and prevent him from seeing, he did not discharge his duty of making observatin when that could be done effectively as it was his duty to do. *Bates* v. *San Pedro, L. A. & S. L. R. Co.*, 38 Utah 568, 114 P. 527; *Drummond* v. *Union Pac. R. Co.*, 111 Utah 289, 177 P. 2d 903; *Holmgren* v. *Union Pac. R. Co.*, 114 Utah 262, 1948, 198 P. 2d 459. On the other hand, if he waited until he was within the cone of light before he looked northward, so that the light then prevented him from seeing, as his testimony seems to indicate, and he continued forward for more than 43 feet (apparently about 58 feet) and onto the passing track, a place of known potential danger, he was negligent in thus going forward without being able to see that he could safely do so. *Nabrotsky* v. *Salt Lake & Utah Railway Company*, supra. *Frank* v. *McCarthy*, 112 Utah 422, 188 P. 2d 737.

In respect to proceeding forward when unable to see, the case is very similar to that of *Ulrickson* v. *Chicago, M. St. P. & P. Ry. Co.*, 64 S. D. 476, 268 N. W. 369, where plaintiff who was familiar with the crossing involved observed for trains at a place where he was considerable distance from the tracks, and seeing none proceeded forward. He next looked for trains when some 35 or 40 feet from the crossing, but at a place where the sun, low in the west, caused a glare on the automobile window and prevented any effective observation through the window. He

nevertheless continued forward without slackening his speed, and was struck by an approaching train. The court held that he was negligent as a matter of law both because he violated his duty to look when he could do so effectively and because he proceeded blindly when he could not see whether it was safe to do so.

Plaintiff places considerable stress on the ruling of this court in *Evans* v. *Denver & R. G. W. R. R. Co.*, 74 Utah 201, 278 P. 809, where a train without lights on the rear end, which had been stopped near a crossing, was apparently started over the crossing at about the same time the automobile began to cross. Due to the darkness of both the night and the train, it was held that there was a jury question as to whether the plaintiff could have seen the train by keeping a proper lookout and the cause was properly allowed to go to the jury. The same analysis can be made of the case of *Clark* v. *Union Pac. R. Co.*, 70 Utah 29, 257 P. 1050, except that fog instead of darkness obscured the crossing, and so regardless of the plantiff's position he had no opportunity to get any better view of the crossing.

This is not the confused, or multiplicity of dangers situation, ruled upon in the cases of *Newton* v. *Oregon Short Line R. Co.*, 43 Utah 219, 134 P. 567, and *Malizia* v. *Oregon Short Line R. Co.*, 53 Utah 122, 178 P. 756. The doctrine governing those cases is applicable only where the plaintiff is confused or apprehensive concerning possible danger from other sources. According to the plaintiff's testimony, this freight train on the main line caused him no anxiety of danger; he testified that he saw that it was stopped and "I knew it was safe to go" and then proceeded forward.

In *Toomer's Estate* v. *Union Pacific Railroad*, 121 Utah 37, 239 P. 2d 163, a greatly different situation existed. Conditions at the crossing made it hazardous and the situation was complicated and confusing; there was no opportunity afforded the traveler for adequate and ef-

fective observation of the oncoming train; there was another long freight train on a track between the traveler and the oncoming train which obstructed both his sight and hearing, and other travelers immediately preceded decedent over the crossing. It was held that under those circumstances a jury question was presented as to whether a reasonable prudent man might have proceeded over the crossing under the circumstances. It requires no recapitulation of the evidence herein to show that the instant case does not fit that pattern.

Cases involving railroad crossings are innumerable. Many are cited in the briefs. It would be a task both endless and useless to attempt to analyze them all. It is settled in this jurisdiction that in order to excuse a traveler from seeing an oncoming train at a railroad crossing, there must be some substantial evidentiary basis for his failure to observe and avoid being struck by it, such as obstructions or other impairments to his ability to observe, or where dangers, distractions or complicated circumstances exist which would confuse, deceive or throw him off guard so that a jury could reasonably find that he used ordinary, reasonable care under the circumstances and yet was unable to perceive the oncoming train. The evidence in this case reveals no such explanation of Mr. Seybold's conduct.

It is plain that plaintiff must have done one of three things: (1) failed to look along the passing track at all, or (2) failed to see the caboose which was there to be seen, or (3) looked but failed to see the approaching caboose because his vision was impaired by the engine light and yet blindly took a chance. Any one of the above alternatives makes him guilty of negligence which proximately contributed to cause his injury as ruled by the trial court.

Judgment affirmed. Costs to respondent.

WOLFE, C. J., and McDONOUGH and HENRIOD, JJ., concur.

**WADE, Justice.**

I concur on the ground that it would be unreasonable to find from this evidence that the caboose was unlighted, and if it were lighted the plaintiff was guilty of contributory negligence in failing to avoid it. If it were unlighted, I think there was a jury question.